### State of Vermont v. Bruno Fanger

[665 A.2d 36]

No. 94-262

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 30, 1995

Motion for Reargument Denied July 26, 1995

---

*Christopher C. Moll*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

*David G. Reid*, Brattleboro, for Defendant-Appellee.

**Dooley, J.** The State of Vermont appeals the Windham District Court's dismissal of one count of unlawful trespass in violation of 13 V.S.A. § 3705(d) against defendant, Bruno Fanger. The State argues that the trial court erred by concluding that the State failed to make a prima facie case. We reverse.

Defendant is the manager and chief caretaker of eight buildings and 350 acres of property located in Jamaica, Vermont. The owners of the property reside out-of-state, and in 1993 they were looking for a housekeeper to live on the property. Defendant recommended Gary and Jessica Clay for the job, who were hired on a trial basis and permitted to reside temporarily in the building, which also housed defendant's office. The Clays did not perform their job satisfactorily, and defendant asked them to leave the property, although he allowed them to remain until they could find alternative accommodations.

Shortly after defendant asked the Clays to leave, defendant informed Mrs. Clay by telephone that she and her husband had to vacate the apartment that day. Defendant then contacted the state police to inform them that he had a problem with a tenant and that he needed to go into the tenant's apartment. The State did not present any specific evidence regarding the content of this conversation, other than that the police officer "advised the Defendant of the consequences if he did not abide by the laws." After this conversation with the state police, defendant went to the building where the Clays resided, and again told Mrs. Clay that she and her husband had to leave the apartment that day. When Mrs. Clay responded that defendant should discuss the issue with her husband, defendant forced his way into the apartment despite Mrs. Clay's efforts to prevent him from doing so.

Defendant moved to dismiss the information, alleging the inability of the State to establish a prima facie case. See V.R.Cr.P. 12(d). In support of the motion, defendant filed an affidavit describing his version of what occurred when he entered the apartment the Clays occupied. A hearing was held, and Mrs. Clay testified on behalf of the State. The court had before it her testimony and affidavit, and the affidavits of the investigating officer[1] and the defendant. See *id.* 12(d)(2) (motion to be decided on basis of "affidavits, depositions, sworn oral testimony, or other admissible evidence"). The court ruled that the State failed to show that defendant knew he was not privileged to enter the apartment, an essential element of the crime, based on defendant's explanation that he entered to turn on the heat in other apartments and that he believed the Clays' tenancy had ended.

The crime with which defendant is charged is defined as follows: "A person who enters a dwelling house, whether or not a person is actually present, knowing that he is not licensed or privileged to do so shall be imprisoned for not more than three years or fined not more than $2,000.00, or both." 13 V.S.A. § 3705(d). There is no question that defendant entered a dwelling house. The question before us relates solely to the knowledge element.

■■ The standard for addressing a motion to dismiss for lack of a prima facie case is the same as the standard for a motion for judgment of acquittal. *State v. Norton*, 147 Vt. 223, 229, 514 A.2d 1053, 1058 (1986) (standard in Rule 29 for motion for acquittal applies to motion to dismiss for lack of prima facie case). The court must determine "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has [produced] evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." Reporter's Notes, V.R.Cr.P. 29; see V.R.Cr.P. 12(d)(2) (on motion to dismiss for lack of prima facie case, State must show "it has substantial, admissible evidence as to the elements of the offense challenged by the defendant's motion"). Thus, the issue before the trial court, and before this Court on appeal, is whether sufficient evidence was disclosed to prove beyond a

---

[1] The court excluded much of the investigating officer's affidavit on hearsay grounds, but allowed the part of the affidavavit bearing on this decision.

reasonable doubt that defendant entered the Clays' residence *knowing* that he was not licensed or privileged to do so.[2]

██ Normally, a prima-facie-case ruling is made solely on evidence offered by the State. The rule does, however, authorize the defendant to "cross-examine witnesses and introduce affidavits or further evidence in his own behalf." V.R.Cr.P. 12(d)(2). In view of this authorization, we believe the trial court must make its ruling based on all the evidence before it, whether produced by the State or the defendant. Cf. *Ross v. Sirica*, 380 F.2d 557, 559 (D.C. Cir. 1967) (under comparable Federal Rule of Criminal Procedure 5(c) (now 5.1), probable cause determination is made on all evidence, including evidence adduced by accused); *Schwader v. District Court*, 474 P.2d 607, 609-10 (Colo. 1970) (same under Colorado Criminal Rule 5(c)(3)).

 Vermont's criminal trespass statute is based on the Model Penal Code adopted by the American Law Institute in 1962. See *State v. Kreth*, 150 Vt. 406, 409, 553 A.2d 554, 556 (1988). The primary similarity between the two statutes is that a trespass is committed only by a person *"knowing"* that he is not licensed or privileged to do so." Compare Model Penal Code § 221.2(1) (1962) (emphasis supplied) with 13 V.S.A. § 3705(d). Comment 2(a) to § 221.2 states that the knowledge requirement excludes from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received express or implied permission to enter or remain on the premises. The knowledge requirement establishes a subjective standard. See *State v. Sargent*, 156 Vt. 463, 466-67, 594 A.2d 401, 403 (1991); Model Penal Code § 2.02(b)(i) & Cmt. 2 (1980). It is not sufficient for the State to show that defendant should have known he was not licensed or privileged to enter the dwelling. See *Sargent*, 156 Vt. at 465-66, 594 A.2d at 402. This interpretation of the "knowing" requirement is supported by other jurisdictions that have criminal trespass statutes containing the same relevant language as Vermont's. See *State v. Dansinger*, 521 A.2d 685, 689 (Me. 1987) (liability for criminal trespass necessarily involves state of mind of defendants); *State v. Santiago*, 527 A.2d 963, 965 (N.J. Super. Ct. Law Div. 1986) (no criminal liability for trespass where defendant perceived that she was privileged to be on premises); *Commonwealth v.*

---

[2] The State also addressed whether defendant's entry was privileged or licensed. The trial court did not consider this argument, and did not rule that the State failed to show absence of license or privilege. Accordingly, we have not addressed this argument, except tangentially in relation to the knowledge element.

*Sherlock*, 473 A.2d 629, 632 (Pa. Super. Ct. 1984) (no criminal liability for trespass where defendant could have believed that he was licensed to be on premises).

■ ■ We recognize that "[i]ntent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." *State v. Cole*, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988). Nevertheless, we agree with the trial court that much of the State's claim for the adequacy of the evidence cannot be sustained. For example, the State points to defendant's conversation with the state policeman as evidence that defendant knew that his actions were unlawful. The officer's affidavit, however, states only that he "advised the Defendant of the consequences if he did not abide by the laws" without providing any details of the conversation. It is impossible to determine what advice, if any, the officer gave defendant about the requirements of the law or about actions defendant might take. Thus, we agree that this evidence alone does not meet the State's burden.

■ Nor are we convinced that we should find the intent element because defendant is improperly attempting to rely on his ignorance of the law. See *State v. Woods*, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) (maxim ignorantia legis non excusat is "of unquestioned application in Vermont . . . both in civil and in criminal cases"). Assuming, as the State argues, that the law clearly gave defendant no privilege to enter on behalf of the property owner, the subjective intent standard of § 3705(d) necessarily includes knowledge of defendant's legal right to enter. See Model Penal Code § 2.04(1)(a) (1962) (ignorance as to matter of fact or law is defense if ignorance negatives the knowledge required to establish material element of offense).

■ We are, however, persuaded that the evidence on the facts surrounding defendant's entry, and his conduct after he entered, creates an inference that defendant knew he was not licensed or privileged to enter. In his affidavit, defendant explained his reason for entry:

> [I]t was becoming quite cold in this area of Jamaica and it was necessary for me to enter the office where the Clays had been staying in order to gain access to the furnace switch and fuse box which controlled not only the office where Mr. and Mrs. Clay had been temporarily staying, but other apartments in the same building. My intention in entering the apartment on October 12, was to, in fact, secure the

thermostat, electric and other utilities to the other apartments in the building. When I entered the office, it was under my authority as caretaker and with the permission and under the authority of the owner . . . for I believed I had every right and privilege to enter the office.

Similarly, the affidavit of the investigating officer stated that when the officer arrived "[d]efendant advised that he tried to go into the house to make sure the heat was on."

The testimony of Mrs. Clay clearly disputed defendant's purpose for entry. She testified that defendant's only acts with respect to the heat and electricity in the building were to disconnect the heat, electricity and hot water in the apartment in which the Clays were staying. She testified that defendant said nothing about protecting the heat in other apartments and made clear he was there to evict her. We conclude that where defendant has explained his intent, and there is evidence negativing that explanation, the inference can be drawn that defendant knew he did not have a license or privilege to enter so that the case should not have been dismissed.

■ Our conclusion is reinforced by other evidence of defendant's actions. According to Mrs. Clay's testimony, defendant's entry was accomplished by force and was accompanied by violence. She testified that defendant pushed open the door while she was attempting to keep it shut, and in the process knocked over her child. She added that "he grabbed my wrist and twisted it behind my back and pulled my hair." This level of violence is inconsistent with an understanding that defendant was simply doing what the law allowed.

Both in its procedural posture and in the nature of the evidence, this case is similar to *Commonwealth v. McBride*, 595 A.2d 589 (Pa. 1991), decided under the virtually identical Pennsylvania statute. In *McBride*, the trial court dismissed the prosecution for lack of a prima facie case because the Commonwealth had failed to show that the defendant did not know he lacked permission to enter a house. The Supreme Court reversed, relying on the fact that the defendant approached the house with a drawn gun and entered by kicking in a door. The court reasoned that from these facts it was "reasonable . . . to infer that appellee lacked permission to enter." *Id.* at 592. Similarly in this case, the evidence of defendant's violent acts undercuts an explanation of his conduct as the exercise of a landlord's right to evict a tenant in accordance with the law.

*Reversed and remanded.*