# State of Vermont v. Kenneth Donaghy

[769 A.2d 10]

No. 99-405

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed December 8, 2000

*Kyle C. Sipples*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *Anna Saxman*, Appellate Attorney, and *Seth Carey*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant Kenneth Donaghy appeals from his conviction of domestic assault under 13 V.S.A. § 1042. He seeks a new trial on the grounds that: (1) the evidence was insufficient to prove the element of "attempt" beyond a reasonable doubt, and (2) the trial court failed to properly consider his challenge, under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecutor's pattern of gender-based peremptory jury challenges. On the second point, defendant argues that the trial court failed to make findings, required by *Batson*, on whether he had established a prima facie case, and then failed to perform the final two steps mandated by *Batson*. We hold that defendant established a prima facie case of intentional discrimination that was not properly considered by the trial court. We therefore remand for a *Batson* hearing to determine whether there was gender discrimination in the jury selection, and if so, to grant a new trial. We otherwise affirm.

During jury selection, defense counsel objected to the prosecutor's pattern of peremptory strikes, alleging they were based on gender. The prosecutor had used his first four strikes to remove men from the venire that contained ten women and eleven men. Defense counsel objected after these four strikes and asked that the prosecutor provide a nondiscriminatory reason for his challenges pursuant to *Batson*. The court replied, "We're not going to interrupt this jury draw for that kind of objection. We will select this jury and we'll deal with that issue later." At the start of the next round of strikes, the venire consisted of nine men and twelve women. The prosecutor passed twice, then struck a woman and two more men. Defense counsel renewed his objection. The court again responded that the objection would be dealt with later. The final jury, including two alternates, consisted of eight men and six women.

Before trial, the court held a hearing to consider cross-motions to strike the jury panel due to gender discrimination in the exercise of peremptory challenges by both sides. In totality, the argument on these motions, as well as the prosecution's oral motion to strike the

jury panel because of prejudicial newspaper publicity, fills less than six transcript pages and probably took less than ten minutes. Defense counsel went first, arguing that the incidence of challenges of men by the prosecution made a prima facie showing of gender discrimination, and requested as relief "that the court commence *J.E.B.* proceedings, [and] force the State to provide entirely gender-neutral reasons for peremptories . . . ."[1]

At that point, the judge addressed the prosecutor by name: "Mr. Sipples?" The prosecutor responded:

> before we get to the merits of either of the motions that were filed, we should address the prejudice that's resulted from the filing of motions and the subsequent press attention that's been given thereto; and on that basis I don't think we're in a position where we could proceed with a trial because the jury has been irrevocably tainted because of press that has taken place as a result of these motions.

The prosecutor went on to claim that selected jurors had read the newspaper articles, and he also accused defense counsel of intentionally generating the press attention to make the prosecution look bad in the eyes of the jury. He concluded: "I think we would have to strike the jury based on that before we get to any of the *J.E.B.* issues."

At the conclusion of the hearing, the court denied both motions to strike, concluding that "the end result ended up with a jury being reasonably well-balanced" and that the defendant could not complain "when eight out of the fourteen jurors selected are male." The court concluded that the gender make-up of the jury was fair, and that jurors would render a verdict based on the evidence and not what they read in newspapers. The ruling came so abruptly that neither party responded to the argument of the other, and neither side addressed the prosecution's *Batson* challenge to the defense's use of its peremptory strikes. Defendant went to trial and was convicted of domestic assault; defendant now appeals.[2]

---

[1] By "J.E.B. proceedings," defense counsel was referring to *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), where the United States Supreme Court extended *Batson* to prohibit discrimination in jury selection based on gender.

[2] The State has not appealed the denial of its motion to strike the jury panel on the ground that there was prejudicial pretrial publicity, nor has it appealed the rejection of its own challenge to defendant's use of peremptory strikes. Nevertheless, we note that a defendant's use of peremptory strikes during jury selection constitutes state action for purposes of the Fourteenth Amendment and, therefore, is subject to the same

Defendant argues on appeal that the evidence was insufficient to convict him of the element of attempt, an element in the information by which he was charged and an alternative element in the domestic assault statute. Alternatively, he argues that he should receive a new trial because he raised a prima facie case of gender discrimination in jury selection, which the State failed to rebut.

We begin with defendant's claim that the State failed to establish the element of "attempt." Defendant was convicted of domestic assault pursuant to 13 V.S.A. § 1042, which states in pertinent part: "Any person who *attempts* to cause . . . bodily injury to a family or household member . . . shall be imprisoned not more than one year or fined not more than $5,000.00, or both." (Emphasis added.) Defendant raised the insufficiency of the evidence at trial by way of a motion for a judgment of acquittal at the close of the evidence, which was denied. We review the denial of a motion for acquittal pursuant to V.R.Cr.P. 29 to determine "'whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has [produced] evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt.'" *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995) (quoting Reporter's Notes, V.R.Cr.P. 29).

■ We have held that an "'attempt consists not only of an intent to commit a particular crime, but . . . some overt act designed to carry out such intent.'" *State v. Curtis*, 157 Vt. 629, 631, 603 A.2d 356, 357 (1991) (quoting *State v. Hudon*, 103 Vt. 17, 20, 151 A. 562, 564 (1930)). The evidence at trial showed that the victim, defendant's estranged wife, was working on the roof of a small wooden shed and that defendant drove his truck into the shed at 20-30 miles an hour. The impact caused the shed to shift on its base several inches. She testified that she lost her balance and then caught herself so that she did not fall. It was therefore possible for the jury to conclude, beyond a reasonable doubt, that defendant attempted to cause some bodily injury to the victim by intentionally plowing his truck into the shed while she was on the roof, but was unsuccessful because the shed was sturdily built. Such conduct satisfies the requirement that an attempt include an "overt act" in addition to intent to harm. The evidence was sufficient to support the conviction for domestic assault.

---

scrutiny as the State's use of peremptory challenges. *Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

■■ We next turn to defendant's argument that he is entitled to a new trial because of gender discrimination in jury selection. The United States Supreme Court has held that the use of peremptory strikes to remove potential jurors based solely on race violates the Fourteenth Amendment's Equal Protection Clause. *Batson*, 476 U.S. at 89. The Court extended its holding to include discrimination on the basis of gender in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994), concluding that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." The Court reasoned in *J.E.B.* that discrimination during jury selection harms the litigants, the community, and the juror who is wrongly excluded. *Id.* at 140. Although the harm to the litigants is present in every case, the potential for harm to the community, in the form of increased cynicism towards the judicial system, is "particularly acute in cases where gender-related issues are prominent." *Id.* Because this case involves the gender-related issue of domestic violence, we review it with a keen eye to preventing state-sanctioned discrimination.

*Batson* provided a three-part test for determining whether a party exercised a peremptory strike in a discriminatory manner. First, the party alleging improper use of a peremptory challenge must present prima facie evidence that intentional discrimination has taken place. *Batson*, 476 U.S. at 96-97. Second, if the moving party establishes a prima facie case, the burden shifts to the party who exercised the challenge to provide a race-neutral, or here gender-neutral, explanation for the challenge. *Id.* at 97-98; see *J.E.B.*, 511 U.S. at 130-31. Although this explanation need not be one that would justify a successful challenge for cause, the challenging party may not rebut the prima facie case merely by denying a discriminatory motive. *Batson*, 476 U.S. at 97-98. If an explanation is proffered, the court then must decide whether the reasons given are merely pretexts for discrimination and whether the party alleging a violation has proven intentional discrimination. *Id.* at 98.

■■ We first consider whether defendant made a prima facie showing that discrimination had occurred. Under *Batson* and its progeny, when evaluating whether a challenger has made out a prima facie case, a court should look to (1) whether a peremptory challenge was "exercised against a member of a constitutionally cognizable group," and (2) whether this fact, considered together with "any other relevant circumstances," raises an inference that the party exercising the strike did so in order to exclude the venire person on account of race or gender. *United States v. De Gross*, 960 F.2d 1433, 1442 (9th Cir.

1992). The "other relevant circumstances" include, but are not limited to, the number of members of the cognizable group that are in the venire panel from which the petit jury is chosen, the pattern of strikes against group jurors in the particular venire, and the prosecutor's statements and questions during selection. *Tankleff v. Senkowski*, 135 F.3d 235, 249 (2d Cir. 1998). Additionally, statistical disparities between the number of a cognizable group on a venire panel and the number of those struck are relevant in establishing a prima facie case. *United States v. Alvarado*, 923 F.2d 253, 255-56 (2d Cir. 1991) (*Alvarado III*) (percentage of challenges against minorities that was nearly twice the percentage of minorities on the venire strongly supported a prima facie case).

In this case, the first factor is present: the prosecutor has used peremptory challenges to strike members of a constitutionally cognizable group. Considering the other relevant circumstances, we find that the venire panel consisted of an initial ratio of eleven men to ten women, or 52% men and 48% women. The prosecutor used his first four peremptory challenges, or 100% of his first round challenges, and six of his seven total peremptory challenges, or 85%, to strike men. Defendant supports this evidence of statistical disparity with the pattern that the prosecutor used in executing his strikes. Notably, the prosecutor's "passes" and single strike against a woman came only after defense counsel initially raised a *Batson* challenge.

There are other circumstances that further strengthen defendant's prima facie case of gender-based discrimination. First, this prosecution concerns domestic violence. Because the vast majority of cases of domestic violence involve men abusing women, issues surrounding gender in these cases cannot be avoided. That these issues are intertwined is further evidenced by the Violence Against Women Act of 1994, 42 U.S.C. § 13701 et seq., which provides funding for a number of projects addressing domestic violence, due to its disproportionate impact on women. In fact, in the instant case, the prosecutor's position is funded by a federal grant, pursuant to 42 U.S.C. §§ 3796gg, 3796gg-1, that specifically charges him with prosecuting violent crimes against women. When men appear to be systematically removed from juries selected by a prosecutor so charged, there is a strong inference of gender discrimination.

Additionally, the trial court appeared to believe that gender discrimination had occurred. After hearing from both parties, the court stated: "With all due respect to counsel, I suspect that there was some maneuvering of the type that's been suggested here by both sides."

Moreover, during the hearing, the court noted that defendant's motion to strike the jury panel was being considered together with a similar motion in *State v. DuBois*, No. 802-8-98CaCr, another domestic violence case in which the jury was selected immediately before the jury in this case. The record makes reference to this same prosecutor's use of all seven of his peremptory challenges to strike men in *DuBois*. Although this last circumstance may not alone be enough to create an inference of purposeful discrimination, it is additional evidence that this prosecutor's motives were gender based. *Batson* overruled the requirement of *Swain v. Alabama*, 380 U.S. 202 (1965), that the challenger prove discrimination by showing systemic exclusion of blacks from juries in case after case. *Tolbert v. Page*, 182 F.3d 677, 680 (9th Cir. 1999) (noting that *Batson* overruled *Swain* to the extent it *required* proof of systematic exclusion of African-American jurors in case after case in order to prove purposeful discrimination); *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000) (under *Batson*, party challenging use of peremptory strikes *may* prove purposeful discrimination based on evidence from present case alone). *Batson* did not make such evidence irrelevant.

■ Because the prosecutor used 85% of his strikes against men, taken together with the fact that this is a prosecution for domestic violence, and considering the other circumstances, we conclude that defendant established a prima facie case of intentional discrimination.

■ Because defendant established a prima facie case, the trial court should have completed the last two steps required under *Batson*, requiring the prosecutor to offer gender-neutral reasons for his challenges, and making a final determination whether defendant had proven intentional discrimination. Contrary to the trial court's determination, these steps may not be dispensed with simply because the jury empaneled includes defendant's race or gender, nor may we uphold such a ruling based on harmless error analysis. The case law is clear that a *Batson* claim is not subject to harmless error review. See *Alvarado v. United States*, 497 U.S. 543, 544 (1990) (*Alvarado II*) (relying on final make-up of jury cannot overcome a defective *Batson* hearing); *Tankleff*, 135 F.3d at 248 (racial discrimination in jury selection process is a structural defect affecting the "'entire conduct of the trial from beginning to end'") (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)).

In the case before us, the trial court did not complete the *Batson* steps, but instead looked at the end product and deemed the jury

"reasonably well-balanced." Then, in the interest of "judicial economy," the court refused to strike the jury, essentially ruling that whatever discrimination occurred during jury selection was harmless error. This ruling was erroneous.

Although we have agreed with defendant's argument on his *Batson* claim, we do not agree with his proposed remedy. Defendant argues that the proper remedy for the *Batson* violation is a new trial. We first note that this remedy is inappropriate in the circumstances of this case.

At the hearing below, both parties moved to strike the jury panel, and the argument between them was over fault, and not the proper remedy. In the absence of contrary direction by the court, the prosecutor argued that the *Batson* motions were overtaken by later events, which provided a more urgent reason for striking the jury panel. The prosecutor never responded to defendant's *Batson* motion. This was understandable because defendant asked only that the court order the prosecutor to justify his actions, and the court never did so. There is no indication that the prosecutor was refusing to respond to the defense motion, or that he would have failed to do so if the court had ruled first on his pretrial publicity motion or directed him to respond to defendant's motion. The proper remedy is to require the prosecutor to explain his actions in gender-neutral terms, exactly what the trial court failed to do in the first instance.

Apart from the particular circumstances of this case, the decisions are uniform that unless the passage of time makes it impossible, the appropriate remedy where the trial court fails to follow *Batson*, and does not make a finding that the challenger has made out a prima facie case of discrimination, is a new *Batson* hearing in which the trial court must go through the three-step process mandated by that decision. *Jordan v. Lefevre*, 206 F.3d 196, 202 (2d Cir. 2000); *Alvarado III*, 923 F.2d at 256; *United States v. Joe*, 928 F.2d 99, 103-04 (4th Cir. 1991); *United States v. Romero-Reyna*, 867 F.2d 834, 838 (5th Cir. 1989); *United States v. Hughes*, 864 F.2d 78, 80-81 (8th Cir. 1988); *United States v. Chalan*, 812 F.2d 1302, 1314 (10th Cir. 1987). For example, in *Arnold v. State*, 668 So. 2d 109 (Ala. Crim. App. 1995), a case virtually identical to this one, the State responded to a *Batson* challenge by asserting that the jury actually selected was balanced, and this rationale was accepted by the trial court. The appeals court reversed and ordered the trial court to hold a new *Batson* hearing. *Id.* at 111. We follow the uniform decisions in fashioning this remedy.

Because defendant's *Batson* claim was improperly handled by the trial court, and the prosecutor was never required to justify his

peremptory challenges, we vacate the judgment and remand this case to the trial court to conduct the final two steps under *Batson* and make a proper ruling on defendant's *Batson* claim. After step two, if the prosecutor has not explained his actions in gender-neutral terms, or if defendant is able to demonstrate that the prosecutor's stated reasons for exercising challenges are a pretext, the court should find that there was, in fact, gender discrimination in the jury selection. Only if the court makes this finding, or we make it on a subsequent appeal with a more fully developed record, is the remedy of a new trial appropriate. See *De Gross*, 960 F.2d at 1443.

*Cause remanded for further proceedings consistent with this opinion.*

**Johnson, J.,** concurring and dissenting. I agree with the majority that defendant made out a prima facie showing of gender discrimination in jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986), and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994). Because of the unique circumstances of this case, however, I disagree that this case should be remanded for a *Batson* hearing and instead believe that the proper remedy should be a new trial. In this case, the prosecutor was given an opportunity to explain his peremptory challenges, but he chose not to do so. Then on appeal, the prosecutor offered an explanation for his strikes that is discriminatory on its face. Because the prosecutor essentially admitted to discrimination in the jury selection, the *Batson* analysis is complete on the record before us. Thus, as a matter of judicial economy, it makes no sense to remand to the trial court for a hearing whose outcome, as a matter of law, is predetermined.

After defendant presented his evidence at the *Batson* hearing, which we have concluded established a prima facie case of discrimination, the court turned to the prosecution, giving the State a chance to respond. As the majority noted, the court queried the prosecutor directly by name. "Mr. Sipples?" The colloquy that follows, which the majority leaves out, demonstrates a deliberate attempt by the prosecutor to stall rather than offer a nondiscriminatory reason for his strikes. Because of the importance of the dialogue I shall reproduce it in full here:

*The Court*: Mr. Sipples?

*Mr. Sipples*: Thank you, your Honor. With respect to Mr. Donaghy's motion, I don't see him here today. If that's the case, —

*Mr. Sleigh* [defense attorney]: He's right here.

*Mr. Sipples*: Mr. DuBois? [another defendant with the same complaint]

*Mr. Sleigh*: Mr. DuBois is not here. We weren't able to get him here on short notice.

*Mr. Sipples*: I ask that that motion be dismissed here.

*The Court*: I don't think we're going to do it on that basis.

*Mr. Sipples*: Very well. Your Honor, perhaps before we get to the merits of either of the motions that were filed, we should address the prejudice that's resulted from the filing of motions and the subsequent press attention that's been given thereto . . . .

The prosecutor went on to argue that the panel should be struck because of extensive coverage in the local media, completely failing to rebut defendant's prima facie *Batson* charge. Instead, the prosecutor twice attempted to divert attention to another issue before settling on the media coverage issue as his foil. I am hard pressed to see how the majority can conclude that based on this interaction, the trial court never asked the prosecutor to explain his strikes or that the prosecutor was never given an opportunity to do so.

The prosecution's failure to respond to the defendant's prima facie case is tantamount to a deliberate refusal to respond. The prosecutor had previously filed his own *Batson* motion, arguing that defendant had struck jurors solely on the basis of their gender. When the court gave the prosecutor his opportunity to speak, he could have either presented his own prima facie case or responded to the defendant's argument. Instead, he did neither. The majority argues that the prosecutor did not proffer an explanation for his strikes because he was not asked to do so. Because both parties had filed cross-motions to strike the jury based on *Batson* and the hearing had been convened for that express purpose, the prosecutor should not have expected the trial court to lead him by the hand through the final steps. Presumably, if the prosecutor had gender-neutral reasons for the strikes, he would have given them at the first opportunity.

The proper way to handle this situation is illustrated by *United States v. De Gross*, 960 F.2d 1433, 1442 (9th Cir. 1992). There the prosecutor established a prima facie case of gender discrimination on the part of the defendant. *Id.* The defendant refused to explain her

challenge, and consequently, the court disallowed her challenge. *Id.* Here, the court did not recognize the prosecutor's refusal to answer and allowed the improper challenges to stand. While saving time, this ruling does not protect defendant's, nor the excused juror's, Fourteenth Amendment rights as mandated by *Batson*. See *Jordan v. Lefevre*, 206 F.3d 196, 201 (2d Cir. 2000) (trial court's perfunctory handling of *Batson* claim did not constitute meaningful inquiry into question of discrimination and case was remanded for new trial).

Even if I were to accept the majority's rationale that a remand for a *Batson* hearing is appropriate because the prosecutor did not explain his strikes, I still believe that a new trial is required in this case because of arguments the prosecutor made to this Court on appeal. In the State's appellate brief, the prosecutor argues, "[t]he State's use of peremptory challenges is further supported by the fact that men are much more likely than women to have been charged and/or convicted of a criminal offense, making them potentially biased against the prosecution." Although the first half of this statement may state a true fact, the prosecutor's extension of the rationale to all men is blatant gender discrimination. To claim, in effect, that men are more likely to be biased against the prosecution is precisely the type of "invidious group stereotypes" that have "wreaked injustice in so many other spheres of our country's public life." *J.E.B.*, 511 U.S. at 140.

Thus, the prosecutor has made it perfectly clear on appeal that his motives for the strikes were, in fact, discriminatory. Because this information is available on the face of the record, I see no point in remanding to the trial court when we have all the information to complete the *Batson* analysis as a matter of law at this level. Furthermore, a retrial would take less time than a *Batson* hearing, another round of appeals, and then finally a retrial.

This remedy, although unusual, is not without precedent. Again, *De Gross* is instructive. In that case, after the trial court ruled that the defense had made a prima facie showing of discrimination in its challenge to the strike of an Hispanic woman, the court asked the prosecutor to respond. The prosecutor did so by stating that he excluded the juror because the prosecutor wanted more men on the jury. While the trial court accepted this justification and seated the juror, the Ninth Circuit rejected the justification and found it discriminatory as a matter of law. *De Gross*, 960 F.2d at 1443. The proper remedy, according to the appeals court, was a new trial. *Id.* That situation is analogous to the one before us, except that here it

was not the trial court that determined the defense had established a prima facie case of discrimination. This distinction is not substantive, however, because today the majority decides, in a decision in which I concur, that as a matter of law the defense *did* establish a prima facie case of gender discrimination. Further, in *De Gross*, the prosecutor offered an explanation for the strike that was discriminatory on its face to the trial court, while here the prosecutor offered a similarly discriminatory explanation in his appellate briefs. Again, this difference should not be significant because I, like the Ninth Circuit, would hold that the prosecutor's explanation before us is discriminatory as a matter of law. The fact that these two legal determinations could be made at the appellate level rather than at the trial court should not affect the outcome or the remedy. Thus, because jurors were excluded from the panel as a result of unlawful discrimination and the jury rendered a guilty verdict, the only possible remedy is to strike the conviction and order a new trial.

I recognize, however, that a new trial is not required in most cases. There may be other circumstances where the trial court could make the proper inquiries in a hearing after remand. For instance, in *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991), the trial court had made appropriate findings regarding *Batson* challenges to two jurors, but failed to rule on two others. The Second Circuit remanded the case for a final determination on those two jurors. *Id.* In the instant case, the trial court has not made a partial ruling, but has failed to make any ruling. Therefore, this is not a case appropriate for remand for a *Batson* hearing.

I conclude by noting that *Batson* does not require the prosecutor to articulate reasons that would rise to the level of a challenge for cause. See *Batson*, 476 U.S. at 97. The State's failure to rebut the defendant's case, however, taints the trial with the appearance of gender discrimination. Defendant's conviction should be vacated and the case remanded for a new trial. Because the majority would insist on a procedure whose outcome is predetermined, I respectfully dissent.

I am authorized to state that Justice Skoglund joins in this dissent.