NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 40

No. 2020-027

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Jonathan C. Richards | January Term, 2021 |

David R. Fenster, J.

Rosemary Kennedy, Rutland Count State's Attorney, and L. Raymond Sun, Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Rebecca Turner, Appellate Defender, and Lena Capps, Legal Intern, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **REIBER, C.J.** Defendant Jonathan Richards appeals his jury conviction on one count of misdemeanor unlawful trespass under 13 V.S.A. § 3705(a). He argues that the trial court erred by refusing to instruct the jury on an essential element of the crime, contending that § 3705(a) should have an implied mental state requirement, or knowledge element. Defendant also argues that the trial court abused its discretion by imposing the probation condition that he not "engage in criminal behavior" because the condition is impermissibly vague. We conclude that the Vermont Legislature intentionally omitted a knowledge element in the misdemeanor unlawful

trespass statute, and that the probation condition provides sufficient notice of proscribed conduct. Accordingly, we affirm.

¶ 2. The following facts were adduced at trial. Defendant and complainant began a relationship in December 2016. Shortly after complainant became pregnant, the couple broke up. After the baby was born, complainant wanted defendant to be a part of the baby's life, and in March 2018, the couple got back together. Defendant stayed at complainant's apartment for about a month as they tried to rekindle their relationship but did not stay there every night.

¶ 3. However, the reconciliation did not last. On April 27, 2018, the couple got into an altercation when complainant arrived home late from an evening out while defendant was watching their baby. Complainant testified that she and defendant began arguing, and defendant told her that he did not want to be in a relationship with her and wanted to leave. Complainant said that she was crying and alleged that defendant "was in my face" and then grabbed her by the throat and squeezed. She testified that after defendant let go, she told him to leave and he said, "make me."

¶ 4. The baby woke up during their altercation and began to cry, and complainant testified that she told defendant not to touch the baby. Complainant said that as she went to get the baby, she got knocked down and defendant kneed her in the face. Defendant picked up the baby and complainant said that she begged him to "just give [her the baby] and leave." Defendant refused and continued to hold the baby until he realized that police officers had arrived at the apartment.

¶ 5. Defendant denied strangling complainant or kneeing her in the face. He testified that after he broke up with complainant, he called a friend to come pick him up. When the baby began to cry, he said that complainant told him not to touch the baby and tried to shove past him, but defendant put his arm across the hallway to block her using a "stiff arm" and picked up the baby. He continued to hold the baby and push complainant away from him because he did not

2

"know when . . . [he would] see [his] daughter" again and wanted to hold her until his friend arrived to pick him up. He gave complainant the baby once he saw that the officers had arrived.

¶ 6. Defendant was charged with aggravated domestic assault, domestic assault, and misdemeanor unlawful trespass. See 13 V.S.A. §§ 1042, 1043(a)(1), 3705(a). The Rutland Criminal Division held a one-day jury trial on September 5, 2019. At the close of evidence, the court reviewed the jury instructions with counsel. Defendant objected to the unlawful trespass instructions, arguing that the court should instruct the jurors that to convict they must conclude defendant knew that he lacked authority or consent to remain in complainant's apartment under State v. Fanger, 164 Vt. 48, 52, 665 A.2d 36, 38 (1995) (holding that knowledge requirement in 13 V.S.A. § 3705(d) established subjective standard and it was "not sufficient for the State to show that defendant should have known he was not licensed or privileged to enter the dwelling").

¶ 7. The court declined to read a knowledge element into the statute and instructed the jury accordingly. It distinguished Fanger, where this Court held that the State must show a defendant subjectively knew that he or she lacked license or privilege to enter a home to be convicted of felony unlawful trespass under 13 V.S.A. § 3705(d). The court reasoned that the statutory language at issue in that case included the word "knowing." See 13 V.S.A. § 3705(d). The court also noted that Fanger explains that § 3705 is based on Model Penal Code § 221.2, which includes a knowledge element for both felony and misdemeanor unlawful trespass. However, the statute includes no knowledge element in § 3705(a) for the misdemeanor; it only includes a knowledge element in § 3705(d) for the felony. The court concluded that the omission of a similar knowledge element in subsection (a) was intentional.

¶ 8. The jury ultimately acquitted defendant of the assault charges but convicted him of unlawful trespass. At defendant's sentencing hearing, the court imposed a suspended sentence of one to three months and placed defendant on probation for one year. The court imposed special

3

conditions and standard conditions, including condition A, which provided that "you [are] not [to] be convicted of another crime or engage in criminal behavior." Defendant objected to the latter part of this condition, arguing that the phrase "engage in criminal behavior" is vague and could subject him to criminal penalties under a preponderance of the evidence standard rather than beyond a reasonable doubt. The court decided to impose the condition, concluding that it was "reasonably necessary to ensure that the offender will lead a law-abiding life" under 28 V.S.A. § 252(a).

¶ 9.    On appeal, defendant renews his objections to the jury instructions and probation condition. He argues that the trial court erred by declining to instruct the jury that the State must show that defendant knew he lacked consent or authority to remain in complainant's apartment. He also argues that the court abused its discretion by imposing the probation condition that prohibits defendant from engaging in criminal behavior. We discuss each issue in turn.

I. Jury Instructions

¶ 10.    We first address defendant's challenge to the court's jury instructions. The party who contests a jury instruction bears the burden of showing that the instruction "was both erroneous and prejudicial." State v. Peatman, 2018 VT 28, ¶ 14, 207 Vt. 97, 185 A.3d 1257 (quotation omitted). "When reviewing jury instructions, this Court must read the charge as a whole, rather than piecemeal, and will uphold the instruction where it breathes the true spirit and doctrine of the law and does not mislead the jury." Id. (quotation omitted). Here, the jury instruction reflected the trial court's conclusion that the license element of the misdemeanor unlawful trespass statute, 13 V.S.A. § 3705(a), does not contain a knowledge element. This is a matter of statutory interpretation which we review de novo. State v. Richland, 2015 VT 126, ¶ 6, 200 Vt. 401, 132 A.3d 702.

4

¶ 11.    Defendant challenges the trial court's construction of 13 V.S.A. § 3705(a), arguing that the court should have read a knowledge requirement into the license element.  "When interpreting any statute our overriding goal is to effectuate the intent of the legislature."  State v. Baron, 2004 VT 20, ¶ 6, 176 Vt. 314, 848 A.2d 275.  To give full effect to the Legislature's intent, "we first look at the plain, ordinary meaning of the statutory language."  Id.  "If the plain language of the statute resolves the conflict without doing violence to the legislative scheme we are bound to follow it."  Id. (quotation omitted).  But if the plain language of the statute provides "insufficient guidance to ascertain legislative intent, we look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law."  State v. Thompson, 174 Vt. 172, 175, 807 A.2d 454, 458 (2002).

¶ 12.    Accordingly, we begin our analysis with the plain language of the statute.  When construing the plain language, "we presume that all language in a statute was drafted advisedly" and that "the Legislature knows how to incorporate a scienter element."  Richland, 2015 VT 126, ¶¶ 6, 8 (quotation omitted).  The misdemeanor unlawful trespass statute reads in pertinent part:

> A person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority or the consent of the person in lawful possession, he or she enters or remains on any land or in any place as to which notice against trespass is given . . . .

13 V.S.A. § 3705(a)(1).  The statute provides several options by which notice may be given, including by "actual communication by the person in lawful possession" or "signs or placards so designed and situated as to give reasonable notice."  Id. § 3705(a)(1)(A)-(B).  The plain language of the statute on its face thus does not contain a knowledge element.  See State v. Kerr, 143 Vt. 597, 604-05, 470 A.2d 670, 674 (1983) (declining to read mental state requirement into 13 V.S.A. § 4005, which prohibits carrying weapon while committing felony, where one was "simply not a part of the statute").  However, our inquiry does not end here.

¶ 13.   Despite the plain language of the statute, defendant argues that 13 V.S.A. § 3705(a) contains an implied knowledge requirement in the license element—that is, defendant had to know that he remained on the land without legal authority or consent.  Mens rea, or scienter, is the culpable mental state or criminal mind necessary to impose criminal liability.  See Mens Rea, Black's Law Dictionary (11th ed. 2019).  "We recognize that one of criminal law's most basic principles is that a person is not criminally liable for causing a bad result if he or she did not have some culpable mental state with respect to that result."  State v. Trombley, 174 Vt. 459, 460, 807 A.2d 400, 403 (2002) (mem.) (quotation omitted).  As such, "[i]t is well established that at least with crimes having their origin in the common law, intent generally remains an indispens[a]ble element of a criminal offense."  State v. Day, 150 Vt. 119, 122, 549 A.2d 1061, 1063 (1988).  Unlawful trespass is a crime originating at common law.  See State v. Dixon, 169 Vt. 15, 18, 725 A.2d 920, 922 (1999) (acknowledging that 13 V.S.A. § 3705(a)(1) should be informed by common law and read in context with it).

¶ 14.   In limited circumstances, statutory language can overcome the common-law presumption.  "The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter."  Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986); see also State v. Stanislaw, 153 Vt. 517, 523-24, 573 A.2d 286, 290 (1990) (presuming that common-law crime carried implied mens rea element "in the absence of an express contrary indication from the Legislature").  Nevertheless, we will not imply a mental state element "when the statutory language cuts against such a result and the policy behind the statute would be defeated."  State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989), overruled on other grounds by State v. Brillon, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108.  Accordingly, we turn to the structure and surrounding provisions of the statute to consider whether the Legislature made

6

a deliberate choice to depart from the common law and exclude a knowledge element. For the reasons set forth below, we conclude that it did.

¶ 15. The language of 13 V.S.A. § 3705(a) must be read in the context of its statutory scheme. See Thompson, 174 Vt. at 175, 807 A.2d at 458. Two provisions in § 3705 shed light on the question of the Legislature's intent to omit a knowledge element in the misdemeanor provision. First, the felony provision in § 3705(d) specifies a knowledge element. It prohibits a person from, in relevant part: "enter[ing] a dwelling house, whether or not a person is actually present, knowing that he or she is not licensed or privileged to do so." 13 V.S.A. § 3705(d) (emphasis added). The fact that the felony subsection includes the mental state of "knowing" supports the conclusion that the Legislature made a meaningful choice to require a showing of knowledge for the felony but not for the misdemeanor. This is consistent with the principle this Court stated in Richland that we presume the Legislature knows how to incorporate a mens rea element. 2015 VT 126, ¶ 8.

¶ 16. Next, we are further persuaded of the Legislature's intent to not require a showing of knowledge in § 3705(a) by its removal of the same requirement from § 3705(c). Section 3705(c) prohibits trespass to "a building other than a residence, whose access is normally locked" or "a residence in violation of an order of any court." 13 V.S.A. § 3705(c). A prior version of § 3705(c) contained a knowledge element, including the phrase "knowing he is not licensed or privileged to do so." But in 1982, the Legislature amended the statute to remove this exact language. Compare 1979, No. 153 (Adj. Sess.), § 2, with 1981, No. 223 (Adj. Sess.), § 17. Again, this amendment underscores our conclusion that the Legislature made a deliberate choice to include a knowledge element in some subsections of the statute and omit this element in others, such as § 3705(a).

¶ 17. Read as a whole, 13 V.S.A. § 3705 lays out several trespass offenses, distinguished by the location of the offense and the resulting punishment, and thus creates a cohesive statutory scheme. Section 3705(a) prohibits a person from entering or remaining "on any land or in any

7

place" when notice against trespass has been given and imposes imprisonment "for not more than three months or [a fine of] not more than $500.00, or both." 13 V.S.A. § 3705(a). Next, § 3705(c) prohibits a person from entering "a building other than a residence" that is normally locked or entering "a residence in violation of an order of any court" and imposes imprisonment of "not more than one year or [a fine of] not more than $500.00, or both." Id. § 3705(c). Finally, § 3705(d) prohibits a person from "enter[ing] a dwelling house, whether or not a person is actually present, knowing that he or she is not licensed or privileged to do so" and imposes the most severe punishment: imprisonment "for not more than three years or [a fine of] not more than $2,000.00, or both." Id. § 3705(d). It follows that the Legislature deliberately created this statutory scheme, differing by the location of the offense and increasing in punishment. Tellingly, the most severe offense requires the State to prove a culpable mental state while the less severe offenses do not. See Roy, 151 Vt. at 25, 557 A.2d at 889 (identifying "severity of the punishment" as factor in determining whether Legislature intended to impose strict liability). We thus decline to infer a knowledge element in § 3705(a) when the statutory language, history, and framework indicate that it was intentionally omitted. See Langle, 146 Vt. at 516, 510 A.2d at 1303 (explaining that statute overturns common law when it is "clearly inconsistent with the common law" or "attempts to cover the entire subject matter"). To hold otherwise would frustrate the policy behind the statute.

¶ 18. Further, this Court has acknowledged that some language in 13 V.S.A. § 3705 was derived from language in the Model Penal Code. See Fanger, 164 Vt. at 52, 665 A.2d at 38 (noting that § 3705(d) and Model Penal Code § 221.2 share the requirement of "knowing that he [or she] is not licensed or privileged to do so"); State v. Kreth, 150 Vt. 406, 409, 553 A.2d 554, 556 (1988) (providing that knowledge requirement in § 3705(d) is "essentially similar[]" to Model Penal Code § 221.2). Defendant maintains that we should construe § 3705 in accordance with § 221.2 of the

Model Penal Code, which includes a knowledge element for both its felony and misdemeanor provisions. It provides:

> (1) **Buildings and Occupied Structures.** A person commits an offense if, knowing that he [or she] is not licensed or privileged to do so, he [or she] enters or surreptitiously remains in any building or occupied structure, or separately secured or occupied portion thereof. An offense under this Subsection is a misdemeanor if it is committed in a dwelling at night. Otherwise it is a petty misdemeanor.
>
> (2) **Defiant Trespasser.** A person commits an offense if, knowing that he [or she] is not licensed or privileged to do so, he [or she] enters or remains in any place as to which notice against trespass is given by:
>
> (a) actual communication to the actor; or
>
> (b) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
>
> (c) fencing or other enclosure manifestly designed to exclude intruders.
>
> An offense under this Subsection constitutes a petty misdemeanor if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. Otherwise it is a violation.

Model Penal Code § 221.2(1)-(2).

¶ 19. In some respects, the misdemeanor section of our statute tracks the "Defiant Trespasser" section of the Model Penal Code; however, it is not identical. Among other distinctions, § 3705(a) does not require that the defendant entered or remained "knowing that he is not licensed or privileged to do so" but instead requires that the defendant acted "without legal authority or the consent of the person in lawful possession." 13 V.S.A. § 3705(a). As outlined above, our statute contains no such knowledge element. The distinct language of our statute, which

9

does not require that the conduct be "knowing," leads to the conclusion that the Legislature purposefully left out a knowledge element in § 3705(a) in crafting the statutory scheme.[1]

¶ 20.   Defendant, however, urges us to follow our analysis in Day, 150 Vt. at 123, 549 A.2d at 1064. In that case, the defendant was charged with operating a vehicle without the owner's consent. See 23 V.S.A. § 1094.[2] We concluded that "[t]he [statutory] term 'without the consent of the owner' implies that defendant knew, or should have known, that he was operating the vehicle without the owner's permission." Day, 150 Vt. at 123, 549 A.2d at 1064. Defendant now asks us to apply that same logic to the license element in 13 V.S.A. § 3705(a).

¶ 21.   However, 23 V.S.A. § 1094 differs from 13 V.S.A. § 3705(a), and thus our analysis in that case is not entirely on point. Section 1094 lacked the textual indications present in § 3705 demonstrating a statutory scheme in which the Legislature intentionally omitted a knowledge element. Moreover, § 3705(a) contains an additional element not present in § 1094: notice by a person in lawful possession of the property.

¶ 22.   As such, we are persuaded by our analysis in Roy as a comparison to the statute at issue in this case. 151 Vt. 17, 557 A.2d 884. In Roy, the defendant was charged with eluding a police officer under 13 V.S.A. § 1133. Section 1133 provides that "[n]o operator of a motor

_____

[1] Defendant also points to other jurisdictions requiring a mens rea element for both felony and misdemeanor provisions of unlawful trespass statutes. However, this argument is unavailing as these statutory schemes differ from ours. For example, defendant cites State v. Dansinger, where the Supreme Judicial Court of Maine declared that "the issue of license or privilege necessarily involves the state of mind of the Defendants." 521 A.2d 685, 689 (Me. 1987). However, the Court there was merely confirming the showing of "knowledge" the prosecution must prove under Maine's criminal trespass statute. Unlike 13 V.S.A. § 3705, Maine's statute requires a showing of "knowing" for conviction of all classes of trespass offenses. See Me. Rev. Stat. Ann. tit. 17-A, § 402(1) ("A person is guilty of criminal trespass if, knowing that the person is not licensed or privileged to do so that person . . . .").

[2] At the time Day was decided, § 1094 did not have a knowledge element but the Legislature has since amended it, adding the word "knowing." See 1999, No. 102 (Adj. Sess.), § 1.

vehicle shall fail to bring his or her vehicle to a stop when signaled to do so by an enforcement officer: (1) displaying insignia identifying him or her as such; or (2) operating a law enforcement vehicle sounding a siren and displaying a flashing blue or blue and white signal lamp." 13 V.S.A. § 1133. We declined to imply a knowledge element—that a defendant had to <u>know</u> they were being signaled by a law enforcement officer—to violate that law. <u>Roy</u>, 151 Vt. at 26, 557 A.2d at 890. We concluded that the Legislature purposefully omitted a mental state requirement because "it clearly chose elements to this crime as a substitute for intent." <u>Id</u>. Because the statute requires officers to display "common indicia of law enforcement authority," defendants may not argue they did not recognize law enforcement; rather, they are required to recognize these signs and respond accordingly. <u>Id</u>. We concluded that implying a knowledge element in § 1133 would have cut against the Legislature's carefully placed statutory language and defeated the policy behind the statute.

¶ 23. Here, as in <u>Roy</u>, the statute contains an element that functionally substitutes for knowledge. Section 3705(a) requires that notice to the trespasser be given in certain forms, including by actual communication or by signs and placards. 13 V.S.A. § 3705(a)(1)(A)-(B). Thus, the statute requires that the lawful possessor, or a person acting on the possessor's behalf, provide notice of trespass to the trespasser; to violate the law, a person must enter or remain on the land despite this notice. Under this provision, if sufficient notice against trespass is given, defendants may not contend that they did not know they lacked authority or consent to be on the land. See <u>Roy</u>, 151 Vt. at 26, 557 A.2d at 890.

¶ 24. Indeed, the difficulty of proving knowledge in such cases underscores our conclusion. See <u>id</u>. at 25, 557 A.2d at 889-90 (identifying "the difficulty of prosecution if intent is required" as factor in determining whether Legislature intended to impose strict liability); <u>Fanger</u>, 164 Vt. at 53, 665 A.2d at 38 (explaining that "[i]ntent is rarely proved by direct evidence;

11

it must be inferred from a person's acts and proved by circumstantial evidence" (alteration in original) (quotation omitted)). If the State was required to prove that a person knew or should have known that he or she lacked authority or consent to enter or remain on land, then there would be no need for the person in lawful possession to also provide notice against trespass.

¶ 25. We acknowledge that the notice element does not serve as an exact substitute for knowledge in all instances under § 3705. We held in State v. Pixley that the signs and placards provision in 13 V.S.A. § 3705(a)(1)(B) creates an objective standard, not a subjective one. 2018 VT 110, ¶ 14, 208 Vt. 529, 200 A.3d 174. Under Pixley, if objective evidence of reasonable notice is given through signs or placards, a person may be guilty of trespass even if the person did not subjectively see and understand the signs.[3] Id. ¶ 13. Nevertheless, the statutory language supports the conclusion that the Legislature intended the notice element to serve as a substitute. Section 3705(d) lacks a notice element but includes a knowledge element. See Fanger, 164 Vt. at 53, 665 A.2d at 38 (holding that "knowing" requirement in § 3705(d) established subjective standard). By contrast, the additional element of notice in § 3705(a), together with the requirement that the person lack legal authority or consent, acts as a functional equivalent to a knowledge requirement. Moreover, even objective notice, in conjunction with lack of legal authority or consent, serves as a substitute for a "known or should have known" mental state—the same mental state requirement that we recognized in Day, 150 Vt. at 123, 549 A.2d at 1064.

¶ 26. In sum, we decline to imply a knowledge requirement into the license element of § 3705(a). Because we agree with the trial court's interpretation of § 3705(a), we affirm the trial

---

[3] Our reasoning in Pixley could be read to suggest that "actual communication" denotes a subjective standard. See Pixley, 2018 VT 110, ¶ 14 (explaining that the "fact that the Legislature separated 'actual communication' from 'reasonable notice' indicates that the two options were meant to convey different standards," and if the Legislature had intended to create a subjective standard, it would have used the word "actual" instead of "reasonable"). However, that provision was not at issue in that case, and likewise is not at issue in this case; hence, we do not reach this issue.

court's jury instructions as proper. See State v. Jackowski, 2006 VT 119, ¶ 4, 181 Vt. 73, 915 A.2d 767 ("A jury charge will be upheld if the charge as a whole breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it." (alteration omitted) (quotation omitted)); see also Day, 150 Vt. at 123, 549 A.2d at 1064 ("[A]ll that is required is that the court provide the jury with a charge that is full, fair, and correct on all issues, theories, and claims within the pleadings, so far as the evidence requires." (quotation omitted)).

## II. Probation Condition

¶ 27.    Defendant next argues that the probation condition requiring that he "not engage in criminal behavior" is vague and fails to give him sufficient notice of what conduct is prohibited, and is not reasonably related to his rehabilitation. We review the imposition of probation conditions for abuse of discretion. State v. Moses, 159 Vt. 294, 297, 618 A.2d 478, 480 (1992). "The burden of proof is on the party alleging abuse, and that party must show that the court failed to exercise its discretion or did so for reasons clearly untenable or to an extent clearly unreasonable." State v. Putnam, 2015 VT 113, ¶ 44, 200 Vt. 257, 130 A.3d 836 (quotation omitted).

¶ 28.    Defendant contends that this condition is unreasonable because there were no facts in the record to support the trial court's probation condition, and that it does not help rehabilitate defendant or ensure public safety and thus does not serve the goals of probation. We disagree. The Legislature has granted the trial court discretion to impose probation conditions that the court "deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a). When determining whether a court acted within its discretion, "we have not required the sentencing court to make specific findings regarding each condition, but have looked to whether the record supports the court's exercise of its discretion." Putnam, 2015 VT 113, ¶ 45. This probation condition prohibits defendant from engaging in

13

criminal behavior. In other words, it prohibits unlawful behavior. The court imposed the condition after a jury convicted defendant of unlawful trespass. Accordingly, the condition is reasonably necessary to ensure that defendant will live a law-abiding life and is well within the trial court's discretion to impose under § 252(a).

¶ 29. Defendant maintains that this condition targets "huge swaths of lawful behavior" and thus violates his due process rights because it is vague and fails to provide adequate notice. We have said that "[p]robation conditions may not be unduly restrictive of the probationer's liberty or autonomy." State v. Cornell, 2016 VT 47, ¶ 6, 202 Vt. 19, 146 A.3d 895 (quotation omitted). Further, "due process requires that a convicted offender be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988).

¶ 30. Contrary to defendant's assertion, this condition does not reach lawful behavior. We previously considered this probation condition in State v. Stern, 2018 VT 36, 207 Vt. 479, 186 A.3d 1099.[4] In Stern, the defendant asked his probation officer whether he could possess a firearm. The officer responded that he was not a lawyer, but he thought it was okay. In fact, defendant's possession of a firearm was illegal because he had been convicted of domestic assault. See 13 V.S.A. § 4017(a) (prohibiting person convicted of violent crime from possessing firearm). We explained that the condition "prohibited defendant from engaging in criminal behavior, and it is criminal behavior for someone convicted of domestic assault to possess a gun [under § 4017]." Id. ¶ 8 (alteration omitted).

---

[4] Defendant argues that the trial court's reliance on Stern was misplaced because in that case, the defendant attacked the condition as it applied to his specific case based on the probation officer's conduct. We agree that Stern presented a different legal question: the defendant there did not argue that the condition failed to provide adequate notice, but that the probation officer's actions " 'eviscerate[d] the clarity' of the probation condition such that he cannot be held to have violated the terms of his probation." Id. ¶ 4 (alteration in original). While the legal determination differed, our explanation of the challenged condition remains the same.

14

¶ 31. Thus, our analysis in <u>Stern</u> supports the conclusion that "criminal behavior" means only unlawful behavior, or conduct that constitutes a violation of the law; otherwise, the behavior would not be criminal. This condition is neither vague nor unclear. We presume that defendant knows the law and understands "what conduct qualifies as engaging in criminal behavior," consistent with the "long-standing legal principle that ignorance of the law is not an excuse, meaning, the law presumes all individuals know the law and are responsible for noncompliance." <u>Id</u>. ¶¶ 8, 11 (alteration omitted) (quotations omitted). The condition puts defendant on the same notice as the general public to conform his behavior to the law and thus does not violate his due process rights.

¶ 32. Defendant argues that "engag[ing] in criminal behavior" must have a broader meaning because otherwise, it would restate the first part of the condition, which prohibits defendant from being convicted of another crime. The requirement that defendant "not engage in criminal behavior" is not surplusage, as defendant suggests, because it does not merely prohibit defendant from being convicted of a crime. The practical effect of this condition is to allow for an expedited violation-of-probation hearing before a judge under the preponderance of the evidence standard, rather than before a jury under the beyond a reasonable doubt standard. The Legislature has made this explicit. 28 V.S.A. § 302(a)(4) (providing that "court shall not revoke probation without a proceeding conducted in open court" where the State must prove "establishment of the alleged violation by a preponderance of the evidence"); see also <u>State v. Millard</u>, 149 Vt. 384, 385–86, 543 A.2d 700, 701 (1988) ("A court may revoke probation only after the State has established an alleged violation by a preponderance of the evidence.").

¶ 33. As such, defendant's contention that this condition gives probation officers untethered discretion is rebutted by the protections set in place by statute. As with all probation conditions, "the Commissioner of Corrections, acting through the probation officer, has the

discretion whether to file a violation-of-probation complaint based on a probationer's alleged violation of a condition of probation." State v. Masse, 164 Vt. 630, 631-32, 674 A.2d 1253, 1255 (1995) (mem.) (citing 28 V.S.A. §§ 202(1), 252(b)(2), (8), (11)). Then, "the role of the court is to determine the merits of probationer's probation violation." Id. at 632, 674 A.2d at 1255 (citing 28 V.S.A. § 303(a)). Here, there was no transfer of power or discretion, as probation officers have the discretion to charge a violation of probation and courts retain the power to revoke probation if the statutory requirements are met. See Cornell, 2016 VT 47, ¶¶ 19, 21 (rejecting challenge to condition prohibiting "violent or threatening behavior" in part because "[t]he condition includes no delegation of authority to the probation officer, and the court remains the final arbiter of its meaning").

¶ 34. In sum, we conclude that condition A, specifically the language that defendant "not engage in criminal behavior," is facially valid. The trial court did not abuse its discretion by imposing this condition.

Affirmed.

FOR THE COURT:

_____

Chief Justice

16