### Vermont Tenants, Inc., et al. v. Vermont Housing Finance Agency, et al.

[742 A.2d 745]

No. 98-405

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 8, 1999

*Geoffrey Walsh* and *Stephen Norman,* Vermont Legal Aid, Inc., Burlington, for Plaintiffs-Appellants.

*Glenn A. Jarrett*, Burlington, for Defendant-Appellee Vermont Housing Finance Agency.

*John A. Serafino* and *Elizabeth A. Glynn* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee First Vermont Bank.

**Dooley, J.** This case concerns two residential tenants who had the misfortune of leasing property without knowing it was the subject of strict mortgage foreclosure. At issue is whether Vermont's Residential Rental Agreements Act (RRAA), 1985, No. 175 (Adj. Sess.), codified as amended in relevant part as 9 V.S.A. §§ 4451-4469, prohibits the eviction of such tenants when they have entered into rental agreements after the commencement of foreclosure proceedings but before the expiration of the redemption period. The superior court answered the question in the negative and dismissed their action for failure to state a valid claim under V.R.C.P. 12(b)(6). We agree and affirm.

This action was commenced by Vermont Tenants, Inc., a statewide advocacy organization, and two former tenants, Heather Gross and Aaron Prince, who were evicted by mortgagees who acquired title to the property in which they resided by strict foreclosure.[1] The defendants are the Vermont Housing Finance Agency (VHFA) and First Vermont Bank (FVB), mortgagees of the two properties at issue. The case never moved beyond plaintiffs' complaint, and the motions to dismiss it. Accordingly, for purposes of this appeal, we assume all factual allegations in the complaint are true. See *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999).

Heather Gross was a month-to-month tenant in a mobile home, along with her children, fiancé and the owner of the home. During her tenancy, the mortgagee began foreclosure proceedings because of nonpayment of mortgage payments, but did not serve her. She moved out of the home for a period and moved back in during the Fall of 1997. Thereafter, she learned from her landlord that a strict foreclosure action was pending. She attempted to avert it by payments to the mortgagee, but the mortgagee obtained a foreclosure judgment and served the mortgagor and tenants with a writ of possession on December 2, 1997. Apparently, the eviction has been stayed by agreement pending resolution of this case and a companion case in the United States District Court.

---

[1] A third tenant joined in the complaint, but has not joined in the appeal.

Aaron Prince rented a room in the Alpenhof Lodge in Killington, Vermont on December 1, 1997, paying advance rent of $3500 for a term to end on June 1, 1998. Prince was not aware that the mortgagee of the Alpenhof Lodge had filed a foreclosure action in April 1997 and obtained a strict foreclosure judgment in July 1997. On January 16, 1998, the Rutland County sheriff served on Prince a writ of possession, insisting that he vacate immediately. Prince promptly left the premises.

One other fact is very significant in both cases. Pursuant to 12 V.S.A. § 4523(b), both mortgagees filed copies of their strict foreclosure complaints in the town land records. That section provides:

> (b) The plaintiff shall file a copy of the complaint in the town clerk's office in each town where the mortgaged property is located. The clerk of the town shall minute on the margin of the record of the mortgage that a copy of foreclosure proceedings on the mortgage is filed. The filing shall be sufficient notice of the pendency of the action to all persons who acquire any interest or lien on the mortgaged premises between the dates of filing the copy of foreclosure and the recording of the final judgment in the proceedings. Without further notice or service, those persons shall be bound by the judgment entered in the cause and be foreclosed from all rights or equity in the premises as completely as though they had been parties in the original action.

Plaintiffs filed actions in both state and federal courts. The federal action challenged the constitutionality of § 4523(b), alleging that the constructive notice provision denied tenants due process of law. The state action alleged that despite § 4523(b), mortgagees could evict tenants only in compliance with the substantive and procedural requirements of RRAA. The state action did not contain the constitutional challenge contained in the federal action. Defendants filed motions to dismiss in both cases.[2] In an unpublished decision, the federal court denied the motion to dismiss, holding that the constructive notice provision of § 4523(b) is inadequate to meet the notice requirements of the Due Process Clause of the Fourteenth Amend-

[2] FVB argued that the complaint failed to state a claim, that the action against it was moot, and that Vermont Tenants, Inc. lacked standing to bring the action. The superior court reached the merits and did not address the other grounds asserted for dismissal. Similarly, we do not address the other grounds for the motion.

ment.[3] The superior court ruled that the mortgagee could evict tenants of the mortgagor without complying with either the procedural or substantive requirements of RRAA, and dismissed the complaint on that basis. Plaintiffs have appealed, arguing the decision is incorrect on the merits.

Plaintiffs apparently concede that, but for RRAA, and putting aside the due process challenge which is not before us, the evictions were entirely lawful. We agree with this assessment. The general law on the mortgagee's rights is as follows:

> Where the mortgage precedes the lease the lessee's rights can rise no higher than those of his landlord, the mortgagor. . . . It follows that if the mortgagee could take possession against the mortgagor, as he can in title states at any time in the absence of agreement to the contrary . . . he has the same right against a tenant of the mortgagor. And if such a right is exercised the mortgagee can repudiate the lease and treat the tenant as a trespasser subject to eviction by an action of ejectment.

G. Nelson & D. Whitman, Real Estate Finance Law § 4.22, at 195 (2d ed. 1985). This general statement was applicable here if the mortgagee complied with § 4523(b), at least if the foreclosure action preceded the tenant's interest[4] and at least until the enactment of RRAA. We so held in *Green Mountain Bank v. Bruehl*, 148 Vt. 567, 568-69, 536 A.2d 554, 556 (1987), a case with facts similar to those before us in this case. Applying § 4523(b), we held:

> Tenants . . . acquired . . . possessory rights in the premises after November 8, 1983, the date of plaintiff's foreclosure filings. The possessory rights tenants acquired after No-

---

[3] In a memorandum decision, dated September 7, 1999, the federal court clarified that it had not found § 4523(b) "unconstitutional under all circumstances, but only as applied to this case," and that it had not resolved "issues relating to § 4523(b) which are now before the Vermont Supreme Court." *Vermont Tenants, Inc. v. First Vermont Bank & Trust Co.*, No. 1:98cv30 (D. Vt. Aug. 13, 1999). It also declined to award compensatory damages pursuant to 42 U.S.C. § 1983 to plaintiff, Aaron Prince, because he failed to demonstrate mortgagee acted unreasonably in relying upon 12 V.S.A. § 4523(b), or that the foreclosure was taken with improper or wrongful motives. See *id.*

[4] Although plaintiffs suggest otherwise, we see no reason to consider a situation where the foreclosure action is not brought before the tenant's leasehold interest begins. We note, however, that § 4523(b) does not apply in such a situation, and the mortgagee is required to name the tenant in the foreclosure action. See Reporter's Notes — 1982 Amendment to V.R.C.P. 80.1(b)(1).

vember 8, 1983, clearly fall within the broad ambit of interests encompassed by the statute's "any interest" language. . . . Therefore, when plaintiff filed copies of the foreclosure complaint in the Winhall land records, tenants were given and became bound by the notice warranted by statute. Once notice is given by filing the complaint in the town clerk's office, the foreclosure action supersedes any after-acquired interest, and the possessors of any such interest are "foreclosed from all rights or equity in the premises as completely as though they had been parties in the original action."

*Id.* (citations omitted). *Bruehl* establishes the mortgagee's right to evict the tenant of the mortgagor, but not the procedure. That is established by 12 V.S.A. § 4528, which provides:

§ 4528. Decree foreclosing equity of redemption; writ of possession

If a decree is made foreclosing the right of redemption, the time of redemption shall be six months from the date of the decree unless a shorter time be ordered. If the premises are not redeemed agreeably to the decree, the clerk of the court may issue a writ of possession. Such writ shall have the same force and effect and be executed in the same manner as similar writs issued after judgment by a court of law in ejectment proceedings.

Under § 4528, the mortgagee need not bring a separate ejectment action to evict the tenant. The clerk can issue a writ of possession based on the foreclosure judgment and the failure to redeem, and the writ allows removal of any tenants, as well as the mortgagor. That is exactly what occurred in the Gross and Prince cases.

Plaintiffs argue that the mortgagee's right to evict a tenant of the mortgagor through a writ of possession issued under 12 V.S.A. § 4528 was eliminated by RRAA. To better analyze this argument, we start with an overview of RRAA. Generally, the statute defines the rights of landlords and tenants. It defines a landlord as "the owner, lessor, or where applicable, the sublessor of a residential dwelling unit or the building of which it is a part." 9 V.S.A. § 4451(4). A tenant is "a person entitled under a rental agreement to occupy a residential dwelling unit to the exclusion of others." *Id.* § 4451(9). As between landlords and tenants, the Act contains a detailed provision governing termination of tenancies. See *id.* § 4467. At least fourteen days' notice is required when a landlord terminates a tenancy for nonpayment of

rent. See *id.* § 4467(a). Termination for "failure of the tenant to comply with a material term of the rental agreement or with obligations imposed [under the Act]" requires a minimum of thirty days' notice. *Id.* § 4467(b). When landlord and tenant have no written rental agreement, a landlord may terminate the tenancy for no cause — but must give at least twenty-one days' notice to tenants who pay rent weekly and at least sixty days' notice to tenants who remit on a monthly basis. See *id.* § 4467(c). Likewise, the absence of a written rental agreement permits a landlord to terminate a tenancy, on at least thirty days' notice when the landlord "has contracted to sell the building." *Id.* § 4467(d). Finally, if a landlord terminates a tenancy under the terms of a written rental agreement, tenants whose rent is payable monthly are entitled to at least thirty days' notice and tenants who pay weekly must receive at least seven days' notice. See *id.* § 4467(e). The termination statute does not speak directly to the situation in which a tenancy is terminated by a mortgagee who acquires title by strict foreclosure. Although the Act has a number of exclusions, see *id.* § 4452, they do not include the situation before us.

Plaintiffs argue that the mortgagee becomes a landlord on obtaining title after the property is not redeemed and can terminate a tenancy only pursuant to 9 V.S.A. § 4467. There are both substantive and procedural ramifications to this position. Where none of the grounds specified in § 4467 apply when the mortgagee acquires title, plaintiffs argue that the mortgagee cannot obtain possession unless and until one of the grounds does apply. Thus, on the date FVB acquired title of Alpenhof Lodge, Aaron Prince was occupying a room under a lease for which the rent had been prepaid, and, under plaintiffs' theory, could not be evicted until the lease expired.

In all cases, there would be procedural ramifications. Even if RRAA did not prohibit the termination of the tenancy, it would require the mortgagee to provide notice before termination. Thus, under plaintiffs' theory, VHFA could terminate Heather Gross's tenancy only by providing notice at least sixty days prior to the termination. See *id.* § 4467(c)(1).

Plaintiffs acknowledge that to reach the above results, we must hold that the remedy provided by 12 V.S.A. §§ 4523(b) and 4528, and employed by the mortgagees in these cases, has been superseded with respect to tenants of the mortgagor. They argue that the statutes produce inconsistent results, and two methods of resolving the conflict must be employed: (1) the statute enacted later in time governs over the earlier statute, see *Central Vermont Hosp. v. Town*

*of Berlin*, 164 Vt. 456, 459, 672 A.2d 474, 476 (1995); and (2) the specific statute governs over the more general one. See *Pearson v. Pearson*, 169 Vt. 28, 36, 726 A.2d 71, 76 (1999). Both methods require applying the RRAA termination provisions, they argue, because they are more recent and more specific.

Defendants respond with another principle of statutory construction. They argue that plaintiffs' position necessarily involves an implied repeal of §§ 4523 and 4528, with respect to tenants of the mortgagor. In construing statutes, we have presumed that no repeal by implication is intended. See *State v. Foley*, 140 Vt. 643, 646, 443 A.2d 452, 453 (1982) (presumption "is grounded in judicial respect for the ultimate authority of the legislature over lawmaking"). We have found an implied repeal only if (a) the acts are so far repugnant that they cannot stand together, or (b) are not so repugnant, but the later act covers the whole subject of the former and plainly shows it was intended as a substitute therefore. See *id.* at 645-46, 443 A.2d at 453; *State v. Watson*, 138 Vt. 276, 279, 413 A.2d 806, 807 (1980). Defendants argue that the RRAA and mortgage foreclosure statutes do not meet either prong of this test.

Although the methods of resolving statutory conflicts urged by the parties are appropriate in many cases, we prefer to first look for a construction that will harmonize the seemingly-inconsistent statutes. See *Vermont Agency of Natural Resources v. Riendeau*, 157 Vt. 615, 620, 603 A.2d 360, 362 (1991); *Lanphear v. Tognelli*, 157 Vt. 560, 564, 601 A.2d 1384, 1386 (1991). We believe the statutes can be harmonized by holding that the tenant of the mortgagor does not become the tenant of the mortgagee for purposes of RRAA.

As defendants argue, the definition of "tenant" does not appear to cover the situation before us. 12 V.S.A. § 4523(b) provides that a tenant is "foreclosed from all rights . . . in the premises." If the property is not redeemed, § 4528 provides that the mortgagee is entitled to immediate possession. At that point, the tenant can no longer claim a right of possession from the mortgagor, whose interest is then extinguished. As a result, the tenant is no longer entitled to occupy the rental unit "to the exclusion of others." 9 V.S.A. § 4451. Since the tenant no longer fits the RRAA definition of "tenant," RRAA does not apply.

Plaintiffs suggest an alternative harmonizing interpretation of the statutes that would give priority to RRAA. They argue that the point of strict foreclosure is to give the mortgagee title, but not necessarily possession, to the property. Thus, they argue that § 4523(b) should

not be interpreted to affect the tenant's possessory interest. Further, they argue that § 4528, on which defendants relied to obtain a writ of possession, is discretionary because it uses the word "may," establishing the clerk's power, but not obligation, to issue the writ; and it does not mention tenants explicitly. Thus, they argue it too should be interpreted not to apply to tenants.

The first part of the argument would require us to overrule *Green Mountain Bank v. Bruehl* because it would mean that 12 V.S.A. § 4523(b) would have no effect on the interests of a tenant. It conflicts directly with the rationale of *Bruehl* because in that case we described the tenant's interest foreclosed by § 4523(b) as a "possessory interest." *Bruehl*, 148 Vt. at 568-69, 536 A.2d at 556.

■ We do not believe that the second part of the argument embodies a fair construction of § 4528. There is no suggestion in the language that the writ of possession is limited to some occupants, but not others. It would be illogical to hold that the foreclosure action eliminated the tenant's interest, as *Bruehl* did, but then add that the mortgagee has no remedy consistent with that holding. Moreover, the language of § 4528 states that the writ of possession has the same effect as a writ of possession issued in an ejectment action, which is "conclusive against the parties thereto, their heirs and assigns." 12 V.S.A. § 4766.

We do not agree that the use of the word "may" in § 4528 means that the clerk of the superior court has judicial discretion to refuse to issue a writ of possession in some cases, despite a failure to redeem. In context, particularly since the language refers to the clerk and not the court or judge, we believe the statute provides authority to the clerk to issue the writ, which is available as of right to the foreclosure plaintiff. See *Bisson v. Ward*, 160 Vt. 343, 346-47, 628 A.2d 1256, 1259 (1993); *State v. Goyet*, 119 Vt. 167, 171, 122 A.2d 862, 864-65 (1956) (to determine whether "may" imposes discretionary power or absolute duty, court must ascertain and give effect to "true intent and purpose of the Legislature").

■ For the above reasons, we reject the method of harmonizing the statutes urged by plaintiffs and adopt that argued by defendants — that plaintiffs were not tenants under RRAA when they were evicted. We note that other considerations support this harmonizing interpretation of the statutes. The Legislature could have drafted RRAA to explicitly deal with the situation of a mortgagee who takes title under strict foreclosure, but failed to do so. We take its silence as

an indication that it did not intend RRAA coverage of this situation, particularly because application of RRAA would modify the common law substantive rights of the mortgagee in many cases. See *Estate of Kelley v. Moguls, Inc.*, 160 Vt. 531, 533, 632 A.2d 360, 361-62 (1993). Our interpretation of legislative intent is also supported by a later action of the Legislature with respect to nonjudicial foreclosure by sale. In 1994, the Legislature added 12 V.S.A. § 4532(d), which reads as follows:

> (d) Recording notice of sale in land records. In the case of a nonjudicial foreclosure by power of sale under section 4531a(b) of this title, the mortgage holder shall record the notice of sale in the land records of the town or city where the land lies not less than 60 days prior to the sale. The filing of the notice of the sale shall be in lieu of filing a foreclosure complaint under section 4523 of this title and shall be sufficient notice of the pendency of the nonjudicial foreclosure by power of sale to all persons who acquire any interest or lien in the mortgaged property between the dates of recording the notice of sale and recording the foreclosure deed. Without further notice or service, those persons shall be bound by the power of sale and the foreclosure deed and shall be foreclosed from all rights or equity in the mortgaged property.

This provision mirrors the substance of 12 V.S.A. § 4523 for nonjudicial foreclosure by sale and sets up a similar inconsistency with the termination provisions of RRAA with respect to tenants of the mortgagor.[5] Although we agree with plaintiffs that the action of the Legislature in 1994 is not a definitive demonstration of the 1986 Legislature's intent in enacting RRAA, it is evidence that the more recent Legislature did not see a conflict in the statutes. See *State v. Foley*, 140 Vt. at 648, 443 A.2d at 454.[6]

---

[5] Plaintiffs argue that the amendment to 12 V.S.A. § 4532 is not inconsistent with RRAA because it contains a provision for notifying existing tenants by serving on them the notice of sale, see 12 V.S.A. § 4532(e), and does not contain a provision for issuance of a writ of possession. The former difference goes to legislative policy, not whether there is an inconsistency with RRAA. The latter difference may require the purchaser at the foreclosure sale to bring a separate ejectment action under chapter 169 of Title 12, but the basic inconsistency with the termination provisions of RRAA remains.

[6] We do not give weight to defendants' additional argument that we can derive legislative intent from the unsuccessful introduction of bills to explicitly make evictions following mortgage foreclosures subject to RRAA. Although we have given weight to

Finally, plaintiffs have put before us cases from five other jurisdictions where, in their view, the courts have resolved similar conflicts in favor of the landlord and tenant statute. See *Gross v. Superior Court*, 217 Cal. Rptr. 284 (Ct. App. 1985); *Administrator of Veterans Affairs v. Valentine*, 490 A.2d 1165 (D.C. 1985); *Boston Rent Equity Board v. Dime Savings Bank of New York*, 611 N.E.2d 245 (Mass. 1993); *Chase Manhattan Bank v. Josephson*, 638 A.2d 1301 (N.J. 1994); *United Institutional Servicing Corp. v. Santiago*, 310 N.Y.S.2d 733 (Civ. Ct. 1970). On the surface, most of these decisions favor plaintiffs' position,[7] but there is one very significant, in our view determinative, difference between the statutory schemes involved in those cases and that before us. Each of these cases involves a statute or ordinance, often annexed to a rent control measure, which limits the permissible grounds for eviction and prohibits no-cause evictions. Thus, in each case, eviction by the mortgagee offends the fundamental tenant-protection purpose of the landlord and tenant statute. See Comment, *The District of Columbia Rental Housing Act: Eviction Protection for the Tenants of a Defaulting Mortgagor Under Administrator of Veterans Affairs v. Valentine*, 35 Cath. U. L. Rev. 1133, 1151-52 (1986); Note, *Property — Landlord-Tenant — The New Jersey Anti-Eviction Act Prohibits Foreclosing Mortgagees from Evicting Tenants of the Defaulted Mortgagor Without Cause*, 25 Seton Hall L. Rev. 1292, 1329 (1995) ("Because the Act's primary purpose is to protect tenants from eviction, the status of the evicting party should be of no consequence."). Although RRAA has tenant-protection and landlord-protection provisions, its primary purpose appears to be to codify the common law relationship for residential rental agreements.

---

rejected floor amendments, even when the rejection was in a later session from that which adopted the statutory language in question, see *Muzzy v. Chevrolet Division, General Motors Corp.*, 153 Vt. 179, 188-89, 571 A.2d 609, 615 (1989), we draw no inference from the fact that legislation that would clearly resolve the conflict before us in a particular way was unsuccessfully introduced.

[7] We believe that the New Jersey precedents, however, support defendants' position in this litigation. The New Jersey Supreme Court originally ruled that its anti-eviction act did not supersede the rights of a foreclosing mortgagee, see *Guttenberg Savings & Loan Ass'n v. Rivera*, 428 A.2d 1289, 1298 (N.J. 1981), essentially for the reasoning we have adopted — that in harmonizing the relevant statutes, the anti-eviction act should be construed to apply only to traditional landlord and tenant relationships and not to the relationship between the tenant of the mortgagor and the mortgagee. Following this decision, the New Jersey legislature amended its anti-eviction act, and the court thereafter ruled that the effect of the amendment was to overrule the *Guttenberg* decision. See *Chase Manhattan Bank v. Josephson*, 638 A.2d at 1309. Based on the wording of our statute, the relevant New Jersey precedent is *Guttenberg*, not *Josephson*.

See *State v. Bisson*, 161 Vt. 8, 12, 632 A.2d 34, 37 (1993) (RRAA "contains the general law of landlord and tenant relations that is customarily applicable in any context"). It does not prohibit no-cause eviction and is not tied to control of rent levels. Our holding does not offend a fundamental policy of RRAA. For this reason, even if we accept plaintiffs' decisions as persuasive authority, they do not change our view that the proper course is to harmonize the mortgage foreclosure statutes with RRAA, and, as a result, to hold that RRAA does not apply to eviction following strict foreclosure.

*Affirmed.*