2003 VT 67

**Tonya WOOD o/b/o Megan Eddy v. Richard EDDY**

[833 A.2d 1243]

No. 02-230

¶ 1. July 23, 2003. Mother Tonya Wood appeals on behalf of her daughter from an order of the Chittenden Family Court denying mother's motion for relief from abuse against father Richard Eddy. The court ruled that the definition of abuse under 15 V.S.A. § 1101(1)(C) rather than § 1101(1)(A) applied to children, and that father's conduct towards his daughter does not qualify as abuse under this subsection. We affirm.

¶ 2. Mother and father divorced in 1997, assigning mother sole custody of their son and daughter and granting father bimonthly parental visitation rights. On May 5, 2002, mother filed an emergency motion for relief from abuse against father under 15 V.S.A. § 1103 on behalf of her thirteen-year-old daughter. On May 16, 2002 mother filed a motion to modify the parental rights and responsibility order contained in their divorce, and the Chittenden Family Court held a final hearing on her motion for relief from abuse. At this hearing, daughter appeared as the only witness, providing the court with the following testimony.

¶ 3. On May 5, 2002 the Eddy children visited their father, who had planned a movie outing for that day. A dispute erupted between father and daughter over when they should leave for the theater. When father told his daughter to finish getting ready quickly, daughter replied that the more he hurried her, the more slowly she would come. Father subsequently attempted to leave without her, pushing daughter into a chair as she followed him towards the door.

¶ 4. Father then drove both children to the theater, asking his daughter to roll down her window. When she refused and pushed her leg against the window crank, father reached over and punched her leg. Upon arrival, daughter demanded her ticket, claiming that she wanted to sit by herself. Father grew angry and took both children home, yelling at her as he drove.

¶ 5. At the house, daughter refused to go to her room as her father ordered, claiming that she wanted to leave the premises and call 911. Father called his daughter's grandmother, who offered to drive her back to the mother's home. She rejected this proposal and again attempted to leave the house. Father picked up daughter by the arms and threw her onto a chair, pushing her arms against her face and causing her gum to bleed. A short while later daughter snuck out the door to a nearby gas station, where she called 911. Aside from her bleeding gum, the police found her free from injury.

¶ 6. Daughter testified that her father had been angry with her on that day, and that he had hit her on previous occasions when she gave him an "attitude." Because these altercations caused daughter physical pain, mother filed a motion under 15 V.S.A. § 1103, which grants quick and temporary relief from the abuse of family or household members. At the hearing, she argued that father's behavior satisfied the definition of abuse in 15 V.S.A. § 1101(1)(A): "attempting to cause or causing physical harm." This section defines the terms relevant to requests for temporary relief from the abuse of family

or household members. Although 15 V.S.A. § 1101(1)(C) specifically provides a different and more narrow definition of abuse to children, mother claimed that she could prove abuse under either subsection and asked the court to temporarily suspend father's visits with daughter.

¶ 7. Father agreed that he would temporarily refrain from visitation with daughter at her request, but contested the allegation that he had committed child abuse. The trial court agreed with father and rejected mother's interpretation of 15 V.S.A. § 1101(1), concluding that the Legislature intended only 15 V.S.A. § 1101(1)(C) rather than § 1101(1)(A) to apply to child abuse determinations. The court held that the narrower standard in § 1101(1)(C) reflects not only the need for abuse prevention, but also the desire to preserve parental discretion in disciplinary decisions, a factor not relevant to domestic abuse between adults. Applying § 1101(1)(C), the trial court concluded that father's physical acts did not constitute child abuse as a matter of law.

¶ 8. Mother appealed, arguing that (1) the trial court incorrectly concluded that she lacked standing, as a matter of law, to file for relief under 15 V.S.A. § 1101(1)(A) on behalf of her daughter, and (2) that she had made out a prima facie case against father under this subsection's definition of abuse.

¶ 9. Plaintiff's first argument that the trial court incorrectly denied her standing to sue under 15 V.S.A. § 1101(1)(A) conflates two separate legal issues: whether she has standing to sue for her daughter, and which of the statute's differing definitions of abuse applies to her claim. On the former issue, § 1103(a) explicitly confers standing to the mother, providing that "[a]ny family or household member may seek relief from abuse by another family or household member on behalf of him or herself or his or her children by filing a complaint under this chapter." Where the meaning of a statute is this plain on its face, the Court will enforce the statute according to its terms. *Conn v. Middlebury Union High Sch. Dist. #3*, 162 Vt. 498, 503, 648 A.2d 1385, 1388 (1994). Because the statute does not, however, explicitly state whether § 1101(1)(A) and § 1101(1)(C) or § 1101(1)(C) alone defines child abuse for purposes of § 1103, resolving this latter issue requires a more extensive examination of the Legislature's intent. *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999) (explaining that we look to the intent of the Legislature when statutory meaning is unclear).

¶ 10. 15 V.S.A. § 1101(1)(A) broadly defines "abuse" between family or household members as the act of "attempting to cause or causing physical harm." By contrast, § 1101(1)(C) applies only to "abuse to children" and adopts the narrower definition of abuse provided in 33 V.S.A. § 4912:

> (2) An "abused or neglected child" means a child whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent or other person responsible for the child's welfare. . . .
>
> (3) "Harm" can occur by:
>
> (A) Physical injury or emotional maltreatment; . . .
>
> . . . .
>
> (6) "Physical injury" means death, or permanent or temporary disfigurement or impairment of any bodily organ or function by other than accidental means.

The broad definition of abuse under § 1101(1)(A) encompasses any claim that one could bring using the more specific requirements of § 1101(1)(C). If the Legislature had intended both definitions to apply to child abuse in a relief from abuse

proceeding, it would have had no reason to include § 1101(1)(C) in the statute. Because we will not construe a statute to render a significant part of it pure surplusage, *Cantin v. Young*, 170 Vt. 563, 564, 742 A.2d 1246, 1247 (1999) (mem.), we must conclude that § 1101(1)(C) alone provides the definition of abuse relevant to relief from abuse hearings involving children.

¶ 11. Mother argues against this result, claiming that due to children's vulnerability, the statutory scheme should make abuse of a minor as easy if not easier to substantiate than abuse between adults. Society undoubtedly regards the protection of children as one of its most important responsibilities. *Varnum v. Varnum*, 155 Vt. 376, 384, 586 A.2d 1107, 1111 (1990). Although the Legislature also considers abuse prevention a priority, it had to weigh this interest against two additional factors relevant to allegations of abuse of minors in formulating § 1101(1)(C).

¶ 12. First, to follow the dictates of the United States Supreme Court, the Legislature needed to preserve some degree of natural parents' "fundamental liberty interest" in custody and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Second, the Legislature acknowledged the impracticality of substituting the judgment of a court for that of a parent who observes his children on a regular basis and better knows their particular disciplinary needs. Accordingly, a court must employ some level of deference when evaluating child-rearing preferences to maximize child welfare. *Lane v. Schenck*, 158 Vt. 489, 495, 614 A.2d 786, 789 (1992). The balancing of these two factors against the responsibility of abuse prevention yielded the larger degree of physical harm required to prove child abuse under § 1101(1)(C), as compared with domestic abuse between adults as defined by § 1101(1)(A).

¶ 13. As the trial court correctly explained, this Court has previously interpreted 33 V.S.A. § 4912's requirement of "harm" and "physical injury" as satisfied where the trial court found that a parent (1) inflicted physical punishment out of anger rather than a corrective purpose, *State v. Martin*, 170 Vt. 614, 616, 751 A.2d 769, 771 (2000) (mem.); or (2) physically punished a child in an excessive, unreasonable, or cruel manner. *Gerety v. Gerety*, 131 Vt. 396, 400, 306 A.2d 693, 694 (1973). After hearing daughter's testimony, the trial court ruled that neither of these circumstances had transpired in the present case. Although the court believed that father had caused daughter some physical discomfort, it found that father did not use corporal discipline to a cruel degree, and did not engage in a pattern of malicious as opposed to corrective behavior. We will not set aside the family court's findings if supported by the evidence, nor its conclusions if supported by the findings. *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998). The record in this case does not support the allegation that the trial court abused its discretion in dismissing the motion for relief from abuse.

*Affirmed.*