2004 VT 20

## State of Vermont v. Raymond Baron

[848 A.2d 275]

No. 03-098

Present: **Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed February 27, 2004

*Craig S. Nolan*, Lamoille County Deputy State's Attorney, Hyde Park, for Plaintiff-Appellant.

*Frederick L. Woeckener*, Hyde Park, for Defendant-Appellee.

¶ 1. **Dooley, J.** The State appeals a Lamoille District Court decision granting defendant's motion to dismiss charges that he violated the domestic assault statute, 13 V.S.A. § 1042. The State argues that the trial court erroneously construed § 1042 to require serious bodily injury in cases of parent-on-child assaults. We reverse.

¶ 2. The trial court dismissed this case pursuant to defendant's V.R.Cr.P. 12(d) motion for lack of a prima facie case. In reviewing a Rule 12(d) motion, we consider whether the evidence, "taken in the light most favorable to the State, excluding modifying evidence, would fairly and reasonably tend to show defendant committed the offense, beyond a reasonable doubt." *State v. Millette*, 173 Vt. 596, 596, 795 A.2d 1182, 1183 (2002) (mem.).

¶ 3. In light of this standard, the facts are as follows. On the evening of June 20, 2002, defendant Raymond F. Baron came home to find his sixteen-year-old son, J.B., on the internet. Defendant wanted to use the telephone and asked his son to terminate the internet connection. J.B. responded with a few "smart words," and defendant went upstairs, presumably to use the telephone, and found that his son had not disconnected from the internet. Defendant went back down to the basement and asked his son a second time to terminate the internet connection. J.B. again "sassed back to him," and defendant then backed his son into a corner and struck him with the back of his hand. After defendant struck J.B., he walked away stating, "that was just a slap, next time I'll punch you." J.B.'s left eye was swollen, he had scratches on his nose, a scratch on his right eyebrow, and his glasses were bent as a result of the blow.

¶ 4. The following day, the State charged defendant under 13 V.S.A. § 1042, alleging that he had recklessly caused injury to his son. On September 23, 2002, defendant, with counsel, appeared in the Lamoille District Court to enter a guilty plea. Prior to the plea, the court advised that it did not find sufficient probable cause to support a charge under § 1042. Defendant then withdrew his plea and filed a motion to dismiss pursuant to V.R.Cr.P. 12(d).

¶ 5. The court granted defendant's motion, finding that 13 V.S.A. § 1042 must be read in concert — in pari materia — with the civil abuse prevention statute, 15 V.S.A. § 1101, and by reference in § 1101(1)(C), its attendant definitions in the child protection statute, 33 V.S.A. § 4912. See *Wood v. Eddy*, 2003 VT 67, ¶ 10, 175 Vt. 608, 833 A.2d 1243 (mem.) (with

respect to abuse to children, proper definition of abuse is that in 33 V.S.A. § 4912). The court held that the statutes must be read together because they both involve abuse to "family and household members," terms partly defined in the abuse prevention statutes, 15 V.S.A. § 1101(2). See 13 V.S.A. § 1041 (definition of "family or household members" in abuse prevention statute applies to subchapter containing § 1041). The court reasoned that since the domestic assault statute borrowed one definition from the abuse prevention statute, the legislative intent was that it borrow all definitions. Thus, the court ruled that the definition of "bodily injury" in § 1042 was repealed by implication with respect to an assault on a child and replaced with the abuse prevention definition of "abuse." Because of that ruling, the court concluded that § 1042 requires the State to prove a higher degree of injury for parent-on-child assaults than for assaults involving only adults, and that the State failed to meet that standard. In view of its decision that the proper definition of domestic assault allows a measure of physical parental discipline, the court did not address defendant's additional argument that § 1042 contains a parental corporal punishment defense.

¶ 6. The State appeals the trial court's decision, arguing that the court's construction of the domestic assault statute, 13 V.S.A. § 1042, was erroneous. When interpreting a statute our overriding goal is to effectuate the intent of the Legislature. *State v. Dixon,* 169 Vt. 15, 17, 725 A.2d 920, 922 (1999) (citations omitted). To effectuate the Legislature's intent we first look at the plain, ordinary meaning of the statutory language. *Id.* (citations omitted). If the plain language of the statute "resolves the conflict without doing violence to the legislative scheme" we are bound to follow it. *Lubinsky v. Fair Haven Zoning Bd.,* 148 Vt. 47, 49, 527 A.2d 227, 228 (1986); see also *In re Weeks,* 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). We conclude that the plain language of § 1042 does not require a higher degree of harm when the offense involves parent-on-child assaults.

¶ 7. Section 1042 is a criminal domestic assault statute found in chapter 19 of Title 13. The statute reads:

> Any person who attempts to cause or wilfully or recklessly causes *bodily injury* to a *family or household member,* or wilfully causes a family or household member to fear imminent *serious bodily injury* shall be imprisoned not more than one year or fined not more than $5,000.00, or both.

13 V.S.A. § 1042 (emphasis added). Section 1021, also in chapter 19, defines "bodily injury" and "serious bodily injury" as follows:

For the *purpose of this chapter*:

    (1) "Bodily injury" means physical pain, illness or any impairment of physical condition;

    (2) "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes substantial loss or impairment of the function of any bodily member or organ or substantial impairment of health, or substantial disfigurement;

    . . . .

13 V.S.A. § 1021 (emphasis added).

¶ 8. In contrast, the standard in 33 V.S.A. § 4912, incorporated by reference in 15 V.S.A. § 1101(1)(C), see *Wood*, 2003 VT 67, at ¶ 10, is that of an abused child whose "physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm" by the acts of the parent. Harm can occur by physical injury, which means "death, or permanent or temporary disfigurement or impairment of any bodily organ or function by other than accidental means." 33 V.S.A. § 4912(6). This standard is applicable only to abuse on children. The abuse prevention act generally defines abuse as "attempting to cause or causing physical harm." 15 V.S.A. § 1101(1)(A).

¶ 9. Unlike the abuse prevention act, neither § 1042 nor § 1021 distinguishes between parent-on-child assaults and other assaults on family or household members. When a statute internally defines a term, we must use that definition, not a definition contained in a different statute in a different chapter. See *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . ."); *Dynamic Sports Fitness Corp. of Am., Inc. v. Cmty. YMCA of E. Delaware County*, 768 A.2d 375, 381 (Pa. Commw. Ct. 2001) ("[I]f a statute provides an internal definition for a term, then the statute must be construed according to that definition, not by a definition arising from common law or a prior statute."). It is presumed that "[a] definition which declares what a term means . . . excludes any meaning that is not stated." 2A N. Singer, Sutherland Stat Const § 47.07, at 152 (5th ed. 1992); see also *Colautti v. Franklin*, 439 U.S. 379, 392-93 n.10 (1979) (quoting same). Thus, in construing § 1042 we are bound to use the definitions in § 1021 that the Legislature stated applies. If the Legislature had intended different family or household relationships to be treated differently under § 1042, it would have stated so. See *State v. DeRosa,* 161 Vt. 78, 80, 633 A.2d 277, 278 (1993) ("[W]e presume the Legislature used the language [in the statute] advisedly."); *State v. Camolli*, 156 Vt. 208, 213, 591 A.2d 53, 56 (1991) (same).

■ ¶ 10. We cannot conclude that the plain meaning of § 1042 was changed by the theory of implied repeal adopted by the district court. The district court held that the definitions of "bodily injury" and "serious bodily injury" were impliedly repealed with respect to child victims and replaced by the definition of "abuse" contained in the abuse prevention act, 15 V.S.A. § 1101(1)(C). When interpreting statutes we presume that there has been no repeal by implication. *Vt. Tenants, Inc. v. Vt. Hous. Fin. Agency,* 170 Vt. 77, 83, 742 A.2d 745, 749 (1999). We will conclude that a statute, or a provision in a statute, has been repealed by implication by another act only if "(a) the acts are so far repugnant that they cannot stand together, or (b) are not so repugnant, but the later act covers the whole subject of the former and plainly shows it was intended as a substitute therefore." *Id.*

¶ 11. The most obvious reason that the abuse prevention act did not impliedly repeal the bodily injury definitions for the domestic assault statute is that the domestic assault statute is later in time. The domestic assault statute was enacted in 1993. See 1993, No. 95, § 2. The abuse prevention statute was enacted in 1980, see 1979, No. 153 (Adj. Sess.), § 1; the current definition of abuse, with the separate definition for child victims, was enacted in 1982, see 1981, No. 207 (Adj. Sess.), § 2. An earlier statute cannot repeal a later statute by implication. See *State v. Foley,* 140 Vt. 643, 645, 443 A.2d 452, 453 (1982) (question is whether "subsequent enactment impliedly repeals a statute").

¶ 12. Even if the timing of the enactments supported repeal by implication, we could not conclude that the elements are present here. These statutes are not repugnant to one another because they deal with different subjects. The statute before us deals exclusively with criminal liability. The part of the abuse prevention act containing the definition in issue involves the grounds for issuing a civil restraining order. Moreover, the terms involved, "bodily injury" in the criminal statute, and "abuse" in the abuse prevention act, are different. While we share the district court's view that it would be preferable if the definition of the triggering act was the same for both statutory schemes, or that there be no criminal responsibility in circumstances where no restraining order could be issued, the fact that the Legislature made a different policy choice does not make the statutes repugnant.

¶ 13. Nor does the abuse prevention act cover the whole subject of the domestic assault statute, even with respect to abuse of children. It deals with criminal liability only in the limited circumstance where a person is subject to an abuse prevention order and violates it. See 15 V.S.A. § 1108(e) (violation of abuse prevention order may be prosecuted as

criminal contempt with a maximum punishment of 6 months in jail or a $1000 fine or both). It did not replace the more general crime of domestic assault with this limited criminal liability statute. See *Foley*, 140 Vt. at 648, 443 A.2d at 454.

¶ 14. We cannot reach the same result relying on the statutory construction maxim of in pari materia, as suggested by defendant. As we pointed out in *State v. Fuller*, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995), "in pari materia is a statutory construction technique, and not a rule of law." "[I]t is an 'aid' to construction, to be relied upon where appropriate, but not where it leads to a result not consistent with legislative intent." *Id.* (citations omitted). Even if we consider the domestic assault statute and the abuse prevention act to be part of a common statutory scheme that address the same subject matter or share a common purpose, a prerequisite to applying the maxim, see *Bd. of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 574, 649 A.2d 784, 786 (1994); see also 2B N. Singer, Sutherland Stat Const § 51.03, at 138 (5th ed. 1992), the Legislature here has clearly expressed its intent in its separate definition of "bodily injury" for purposes of the domestic assault statute.

■ ¶ 15. Accordingly, we hold that for purposes of this case, the State must prove bodily injury as defined in 13 V.S.A. § 1021(1), and need not apply a different and higher standard contained in 33 V.S.A. § 4912. Since it is undisputed that the State demonstrated that it has sufficient admissible evidence to meet the proper standard, the district court erred in dismissing the prosecution based on the higher standard under V.R.Cr.P. 12(d). Because of its construction of the applicable statutes, the district court did not rule on defendant's claim that he is entitled to a corporal punishment defense. We decline to address that issue in advance of the district court.

¶ 16. Although we have decided this case in accordance with settled principles of law, we agree with the sentiments expressed in Justice Skoglund's concurrence. Our chief concern is the apparent inconsistency in philosophy between the abuse prevention and domestic assault laws. Thus, we find it illogical that defendant's conduct in striking his son does not rise to domestic abuse to allow a court to stop it by issuing a restraining order, but fits within the definition of domestic assault that may subject defendant to criminal punishment. We urge the Legislature to reexamine these statutory schemes to address this inconsistency.

*Reversed and remanded.*

¶ 17. **Skoglund, J.**, concurring. According to the majority decision, any parent who recklessly causes physical pain to their child can be found guilty of domestic assault under the statute, 13 V.S.A. § 1042. That is, any mom that slaps her son's hand when he insists on trying to touch the burners on the stove or any dad that smacks his daughter's bottom to stop her from biting her brother meets the statutory definition of domestic assault.

¶ 18. I agree that the trial court erred in finding that the Legislature impliedly repealed the definitions of "bodily injury" contained in the domestic assault statutes with respect to child victims and replaced it with the definition of "abuse" contained in the abuse prevention act, 15 V.S.A. § 1101(1)(C). As the majority notes, an earlier statute cannot repeal a later statute by implication.

¶ 19. I also agree that the domestic assault statute deals with criminal liability, not civil restraining orders and that the plain language appears to mean exactly what it says. However, I find illogical the idea that one can be criminally responsible in circumstances where no civil restraining order could issue. But, I cannot find the result so absurd as to permit a different interpretation of statutory intent.

¶ 20. The majority suggests that, if the Legislature had intended to treat parent and child relationships differently under § 1042, it would have done just that. The Legislature did recognize the special relationship between a parent and child when it included a more detailed and restrictive definition of child abuse in the civil abuse statutes, a relationship that includes reasonable discipline, be it verbal or corporal, as part of the upbringing that is reserved to the parent.

¶ 21. The abuse prevention statute broadly defines "abuse" between family or household members as the act of "attempting to cause or causing physical harm." 15 V.S.A. § 1101(1)(A). However, § 1101(1)(C) applies specifically to "abuse to children" and adopts the narrower definition of abuse provided in 33 V.S.A. § 4912:

> (2) An "abused or neglected child" means a child whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent . . .
> (3) "Harm" can occur by:
> (A) Physical injury or emotional maltreatment; . . .
> . . . .

(6) "Physical injury" means death, or permanent or temporary disfigurement or impairment of any bodily organ or function by other than accidental means.

33 V.S.A. § 4912(2), (3), (6).

¶ 22. In *Wood v. Eddy*, 2003 VT 67, ¶ 2, 175 Vt. 608, 833 A.2d 1243 (mem.), a mother seeking a relief-from-abuse order on behalf of her daughter argued that the statutory scheme should make abuse of a minor as easy if not easier to substantiate than abuse between adults. We disagreed, noting that the Legislature had to weigh the interest in abuse prevention of a child against two additional factors. First, the Legislature needed to preserve some degree of natural parents' "fundamental liberty interest" in custody and management of their children. *Id.* at ¶ 12; see also *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). And, second, the Legislature acknowledged the impracticality of substituting the judgment of a court for that of a parent who observes his children on a regular basis and better knows their particular disciplinary needs. The Court wrote: "[t]he balancing of these two factors against the responsibility of abuse prevention yielded the larger degree of physical harm required to prove child abuse under § 1101(1)(C), as compared with domestic abuse between adults as defined by § 1101(1)(A)." *Wood*, 2003 VT 67, at ¶ 12.

¶ 23. If the Legislature honored the right of a parent to reasonable disciplinary decisions in Title 15, how can we presume it intended to ignore the same natural rights when it crafted the domestic assault statute? Before the state stepped between a parent and child in matters of discipline, I suspect that significant and heated debate about the role of the government in parental decision making would have occurred. I respectfully suggest that the Legislature would not have criminalized parental corporal punishment without signaling their intent to do so.

¶ 24. However, I must concur that this is what they did. Inadvertently, perhaps, but legally and literally, by the plain language used, they made spanking a crime.