VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        25-AP-025

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,    2025

Jenny Rafuse v. James Rafuse*

} APPEALED FROM:
}
} Superior Court, Caledonia Unit;
}
} Family Division
}
} CASE NOS. 24-DM-01438 & 24-FA-02796
  Trial Judge: Justin P. Jiron

In the above-entitled cause, the Clerk will enter:

Father appeals a relief-from-abuse (RFA) order concluding that he abused his minor daughters and limiting his contact with them. On appeal, he argues that his actions do not meet the statutory definition of abuse, and that the trial court erred in concluding that the children were at risk of harm. We affirm.

The parties were married and have two minor daughters, born in 2008 and 2012. This appeal stems from a relief-from-abuse (RFA) petition filed by mother in 2024 on behalf of her and the children. Mother's petition asserted that she and the children were stalked and sexually assaulted and that there was a danger of further abuse.

Some context is helpful to understand the legal issues in the case. To obtain an RFA order, a plaintiff must prove by a preponderance of the evidence that a family member abused the plaintiff and that there is a danger of further abuse. 15 V.S.A. §§ 1101(1) (defining abuse), 1103 (providing process for obtaining RFA order). Abuse includes "abuse to children" as defined in the child-welfare statutes. Id. § 1101(1)(A)(iii). An abused child is one "whose physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions" of a parent. 33 V.S.A. § 4912(1). Harm is defined to include "emotional maltreatment," which means a "pattern of malicious behavior that results in impaired psychological growth and development." Id. § 4912(6)(A), (5).

At the RFA hearing, both parties were represented by counsel and testified. The family division admitted several audio recordings the elder daughter made of father's interactions with the children. The court found the following. In separate incidents on different days from May 27 to June 16, 2024, father made derisive remarks to the children when they were doing chores,

screaming at them repeatedly and, in at least one instance, mocking them for crying. Based on the evidence, the court found that (1) father abused his daughters within the meaning of 33 V.S.A. § 4912 insofar as his emotional maltreatment created a substantial risk of harm to their psychological growth and development; and (2) there was danger of further abuse given that father's behavior abated only when the children were effectively removed from his custody in connection with the parties' divorce proceeding. The court issued a final RFA order, setting limited contact for father with the children and granting parental rights and responsibilities to mother.[1]

Father moved to reconsider, arguing, as relevant here, that the evidence did not support a finding of abuse under § 4912 or this Court's decision in Wood ex rel. Eddy v. Eddy, 2003 VT 67, 175 Vt. 608 (mem.). Father claimed that the recordings demonstrated that father raised his voice to reprimand the children for failing to do their chores and for back talk. Father asserted that under Wood, his actions did not constitute abuse because he was engaging in discipline.[2]

The family division denied the motion. The court concluded that Wood was distinguishable in that it involved a single event, whereas here father engaged in a pattern of conduct over time: he berated and belittled the children for performing chores in an improper manner, sometimes while screaming and "reducing the youngest to sobbing." The court explained that the behavior "did not appear to be typical parental discipline" because father lost control of his emotions and engaged in a "battle of wills until the children were defeated," using a mean-spirited and bullying tone. The court concluded that the statute defined abuse to include putting a child's physical health, psychological growth and development, or welfare at risk through emotional maltreatment. The court found that father's actions presented a risk of harm given father's repetition of this conduct over time and the substantial emotional distress suffered by the children. Father appeals the modified RFA order.

On appeal from the grant of an RFA order, we apply a deferential standard of review and will uphold the family division's "findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513.

Father first argues that the undisputed facts do not support a finding of abuse as it is defined in the relevant statutes and this Court's decision in Wood. The facts of Wood are as follows. The mother filed for an RFA order on behalf of her daughter against her former husband based on the daughter's testimony about her interaction with the father on a day when there was a planned movie outing. A dispute erupted over the course of the day and there were several physical interactions between the father and the daughter: the father attempted to leave without daughter, pushing her into a chair; after the daughter refused to open a window in the car, the father punched her in the leg; and after they had to leave the theater and went home the father picked up the daughter by the arms and threw her into a chair, pushing her arms against

---

[1] The court found that there was no competent evidence to support the claim of sexual abuse or to warrant entering an RFA order for mother's protection.

[2] Father also argued that the order impermissibly allowed the children to decide whether to engage in parent-child contact. The family division agreed and removed the provision allowing the children to choose whether to engage in visits.

2

her face and causing her gum to bleed. The mother alleged that an RFA was warranted because father attempted to cause or caused the daughter physical harm—the standard in the RFA statute. The trial court determined that father's physical acts had to be assessed under the definition of child abuse in Title 33, and not the general definition of abuse in the RFA statute. 2003 VT 67, ¶ 7.[3] The trial court concluded that the father's physical acts did not constitute child abuse as a matter of law. Id.; see 33 V.S.A. § 4912(11) (defining physical injury as "death or permanent or temporary disfigurement or impairment of any bodily organ or function by other than accidental means"). On appeal, this Court affirmed, holding that abuse in RFA hearings involving children is confined to the definition of child abuse. 2003 VT 67, ¶ 10 (citing 33 V.S.A. § 4912). This Court explained that under § 4912, the requirements of harm and physical injury are satisfied if the trial court finds that a parent "inflicted physical punishment out of anger rather than a corrective purpose," or "physically punished a child in an excessive, unreasonable, or cruel manner." 2003 VT 67, ¶ 13. Because the trial court found that the father did not use discipline to a cruel degree, this Court held that the trial court acted within its discretion in denying the RFA petition.

Father argues that under Wood when parents are disciplining their children, the actions do not amount to abuse as a matter of law. He claims therefore that the court erred in concluding that his behavior in this case met the definition of abuse because he was engaged in discipline. Father's argument is too broad. Wood held that § 4912 is the standard to apply when an RFA is sought on behalf of a child; it did not hold that parental "discipline" can never amount to abuse. There was no legal error here because the court applied the appropriate definition.

Father also contends that his acts did not meet the standard of abuse. Father claims that his actions were much less serious than those committed by the father in Wood and that the family division erred in finding a pattern of conduct here but none in Wood where there was more than one physical altercation. The trial court properly distinguished this case from Wood, which involved a different provision of the statute than the one at issue here. The definition of "harm" includes both "[p]hysical injury or emotional maltreatment." 33 V.S.A. § 4912(5). In Wood, the focus was on physical injury and in that context the trial court found that the father's actions did not meet the definition of physical injury because his physical acts of discipline were not done to a cruel degree. In contrast, the focus here was on emotional maltreatment, which means a "pattern of malicious behavior that results in impaired psychological growth and development." Id. § 4912(6)(A), (5). In this context, the trial court did not err in finding that father's conduct over the course of several weeks amounted to a "pattern" and in distinguishing Wood on this basis. The trial court found that father's behavior went beyond discipline; he lost control of his emotions and acted in a bullying and mean-spirited manner. The court further found that this pattern of conduct put the children at risk of impaired psychological growth and development. These findings are supported by the evidence, and we therefore do not disturb them. See Raynes, 2008 VT 52, ¶ 9 (providing standard of review).

Finally, father argues that the evidence did not support the finding that there was a danger of further abuse. Father claims that there was no danger of further abuse because the evidence

---

[3] Wood cites 15 V.S.A. § 1101(1)(C) as the location in the RFA statute cross referencing the child-abuse statute. Following an amendment, this provision is now in 15 V.S.A. § 1101(1)(A)(iii). Its content is unchanged.

3

showed that he complied with mother's conditions regarding contact with the children. The court found that nonetheless there was a danger of future abuse because there was no order requiring father to comply with mother's requests and father's behavior continued up to the time when the children were removed from his custody. The court acted within its discretion in finding that there existed a danger of future abuse if there was no order regarding father's contact with the children, given his pattern of conduct over time and the fact that it continued until his contact with the children was significantly reduced.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
Nancy J. Waples, Associate Justice

4